UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAMERON PIERCE and PATRICIA PIERCE, husband and wife; KAREN KIRBY, a single woman; MARY J. RAY, a single woman, GREGORY SHERMAN and PAULA SHERMAN, husband and wife, MICHAEL LEPAGE and GERTRUDE LEPAGE, husband and wife; on behalf of themselves and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>NOVASTAR MORTGAGE, INC., a foreign corporation,<br><br>Defendant. | CASE NO. C05-5835RJB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE DEFENDANT NOVASTAR'S LATE DISCLOSURE OF "REBUTTAL" EXPERT WITNESS |

This matter comes before the Court on Plaintiffs' Motion to Strike Defendant NovaStar's Late Disclosure of "Rebuttal" Expert Witness (Dkt. 101). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The class plaintiffs are all borrowers who engaged in loan transactions with defendant NovaStar and claim to have been deceived by NovaStar's failure to disclose its payment of broker fees known as "yield spread premiums" ("YSP"). The plaintiffs brought suit alleging that the

ORDER
Page 1

failure to provide written disclosure of the YSPs charged on their loans violated Washington's Consumer Protection Act ("CPA"), 19.86 *et seq.* On October 31, 2006, the Court certified a class in this matter pursuant to Federal Rule 23(b)(3). Dkt. 74.

The deadline for "[d]isclosure of expert testimony" in this case was August 16, 2006. Dkt. 21 at 1. This deadline was firm and to be changed only by court order. *Id.* at 2.

On August 16, 2006, NovaStar identified David L. Farris as an expert. Dkt. 56. The plaintiffs identified David A. Steifel and Imal Scott. Dkt. 59. On January 22, 2007, NovaStar filed a Disclosure of Rebuttal Expert Witness identifying David Olson as an expert witness. Dkt. 97. The discovery deadline was January 12, 2007. Dkt. 87.

## II. DISCUSSION

The plaintiffs ask that the Court strike the disclosure and expert report of David Olson ("Olson report") on the following grounds: (1) identification of this expert was untimely; (2) David Olson is not offered strictly to rebut the plaintiffs' expert; and (3) the report is irrelevant. The plaintiffs seek an award of fees and costs associated with their Motion to Strike. *See* Dkt. 101. As discussed in more detail below, this discovery dispute has brought to light several other deficiencies in the discovery practice of all parties in this case, frustrating the Court's analysis of the narrow issue before it.

## A. TIMELINESS OF EXPERT WITNESS DISCLOSURE

Disclosure of expert witnesses is governed by Federal Rule 26, which provides as follows:

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. . . .

(C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial **or, if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), within**

**30 days after the disclosure made by the other party.** The parties shall supplement these disclosures when required under subdivision (e)(1).

Fed. R. Civ. P. 26(a)(2) (emphasis added).

The plaintiffs contend that the January 22 disclosure of David Olson was untimely because it failed to comply with the August 16 expert testimony disclosure deadline and was past the January 12 discovery deadline. Dkt. 101 at 6. NovaStar counters that David Olson is a rebuttal witness who was properly disclosed within thirty days of receipt of Imal Scott's (plaintiffs' expert) complete expert report on December 22, 2006. Dkt. 109 at 2.

The plaintiffs' disclosure of Imal Scott on August 16, 2006, includes a section titled "Written Report," which states as follows:

> Mr. Scott will submit a report regarding his opinions within a reasonable time after having an opportunity to review written materials that NovaStar first produced on August 2, 2006 that include Rate sheets, program manuals, training manuals and product matrices.
>
> Mr. Scott will testify regarding the following:
> • Propriety of NovaStar's payment of the yield spread premium and level of disclosure in conjunction with loans to the named Plaintiffs;
> • Interest rates each borrower could have secured absent yield spread premium paid to the broker;
> • industry standards regarding levels of service and compensation;
> • Industry standards regarding disclosure of information to the borrower including disclosure of yield spread premiums;
> • Practices by certain lenders and brokers to avoid compliance with regulatory requirements and to avoid disclosure of information to borrowers for purposes of obtaining increased compensation.

Dkt. 59-3. This report clearly contemplates the provision of a supplemental report, which NovaStar received on December 22, 2006. According to the plaintiffs, Imal Scott did not have all of the materials necessary to craft a complete report on or before August 16, 2007, because NovaStar failed to produce material documents. *See* Dkt. 110 at 2. Neither NovaStar's alleged failure to produce nor alleged deficiencies in the first report of Imal Scott was brought to the Court's attention. The plaintiffs provided NovaStar with a second report ("Scott report") on December 22, 2006. Dkt. 102 at 5-9 (report), 109-2 at 2 (emailed to NovaStar on December 22). Interestingly, the declaration of plaintiffs' counsel regards the December report, not the August

ORDER
Page 3

report, as Imal Scott's expert report. Dkt. 102 at 1.

The Court's Minute Order did not specify whether the deadline for disclosure of experts applied to rebuttal experts. The Minute Order refers to the "[d]isclosure of expert testimony," which arguably encompasses rebuttal experts. *See* Dkt. 21 at 1. If the Minute Order were read this way, either party could prevent an opponent from utilizing a rebuttal expert merely by waiting until the last possible moment to disclose the party's own expert. This reading would promote gamesmanship and would not contribute to the orderly progression of the case. Instead, the Court should hold that the Minute Order is silent as to the deadline for disclosure of rebuttal experts and that the default provision of Federal Rule 26(a)(2)(C) applies. In other words, the deadline for disclosure of rebuttal witnesses in this case is thirty days after the opposing party's disclosure. *See* Fed. R. Civ. P. 26(a)(2)(C).

Here, David Olson's report appears to attempt to rebut Imal Scott's December 20, 2006, report and not the report filed on August 16. The date of the disclosure of Imal Scott's second report was December 22, 2006. Dkt. 109-2 at 2. Pursuant to Federal Rule 6, the deadline for disclosure of the defendant's rebuttal expert was January 22, 2007. *See* Fed. R. Civ. P. 6 (Time). NovaStar filed its disclosure of David Olson as a rebuttal witness on January 22, 2007; the disclosure was timely. *See* Dkt. 97. The Court should therefore decline to strike the disclosure of David Olson or David Olson's expert report as untimely.

## B. CONTENTS OF REBUTTAL REPORT

The plaintiffs move to strike David Olson's report on the grounds that it does not constitute a rebuttal to Imal Scott's report and is not relevant to the litigation. The default deadline for disclosure of rebuttal experts specifically provides that such rebutting experts must be "intended *solely* to contradict or rebut evidence *on the same subject matter* identified by another party under paragraph (2)(B)." Fed. R. Civ. P. 26(a)(2)(C). To the extent that the Olson report does not rebut the Scott report, it should be stricken.

To determine whether David Olson's report may properly be characterized as rebuttal and

whether the report is relevant, the Court has compared each section of the Olson report with the Scott report as a whole. The Court notes that the Olson report is accompanied by tables, only some of which are referenced in the body of the report. The Court's holdings apply to sections of the report specifically referenced in this Order and to the tables that accompany such sections of the report.

The first section of the Olson report is labeled "Source of Data Used in this Report" and includes three paragraphs. The first paragraph is mostly introductory and summarizes the plaintiffs' claims. The second paragraph describes the studies that provide the basis for David Olson's opinions. The third paragraph offers statistics regarding the number of lenders and brokers in the country and in Washington. NovaStar contends that these data demonstrate that the plaintiffs were not overcharged. Dkt. 109 at 11. Although Imal Scott does not appear to conclude that the YSPs in this case were too high, evidence of the competitiveness of the brokerage industry does tend to refute Imal Scott's statements that he "would have been willing to originate the loan extended to each of the named plaintiffs for lower compensation than the respective broker received for each loan." Dkt. 102 at 6. The Court should therefore decline to strike the first section of the Olson report.

The second section of the Olson report is labeled "Total Compensation to Mortgage Brokers" and includes three paragraphs. The plaintiffs contend that this section does not rebut Imal Scott's report and is irrelevant. Dkt. 101, 110. This section describes average broker compensation rates as percentages of the loans brokered and as dollar amounts. Dkt. 97 at 2-3. This data is responsive to Imal Scott's statements that he would have brokered the plaintiffs' loans for less and that he is aware of brokers who charge rates that are higher and lower than the rates he charges. The Court should decline to strike this portion of the report as improper rebuttal.

The Court should also decline to strike this portion of the report as irrelevant. As the Court has already recognized, the actual amount of the YSPs charged on the plaintiffs' loans is relevant to determining whether the borrowers would have sought to further negotiate for a lower fee. *See* Dkt. 60 at 13 (Order Denying Plaintiffs' Motion for Class Certification). Whether the YSPs charged on the plaintiffs' loans comport with average YSP rates is relevant to this inquiry.

The third section of the Olson report is labeled "Work Performed by Mortgage Brokers" and contains two paragraphs. The first paragraph describes broker services. Dkt. 97 at 3. This information does not appear to contradict or rebut any portion of the Scott report and should be stricken. The first paragraph also describes how brokers do not receive compensation for loans that do not close. *Id.* The Scott report is silent as to when a YSP charge will apply, and this portion of the Olson report tends to explain this issue and should not be stricken as improper rebuttal. The remaining discussion in this paragraph goes beyond the bounds of merely explaining when a YSP will be charged or rebutting the Scott report: it details the rate at which loans are closed, the monthly revenue of a loan officer in 2004, David Olson's opinion as to whether this revenue is "high," and the impact on broker compensation if YSPs were reduced by half. *Id.* at 4. This portion of the Olson report should be stricken. The final paragraph of this section discusses the HUD test for determining whether a broker's overall compensation is reasonable. *Id.* It does not appear to rebut any portion of the Scott report and should be stricken.

The fourth section of the Olson report is titled "Growth in Payment of Yield Spread Premiums" and contains two paragraphs. The first two sentences of this section describe yield spread premiums as allowing more people to own homes and reducing up front payments to mortgage brokers. This rebuts Imal Scott's statements that yield spread premiums are inherently disadvantageous. *See* Dkt. 102 at 5. The remainder of this section describes the percentage of average mortgage broker income derived from yield spread premiums. *See* Dkt. 97 at 5-6. The Scott report does not discuss YSPs as a portion of a broker's total compensation; the Court should therefore strike this portion of the Olson report as improper rebuttal.

ORDER
Page 6

The fifth section of the Olson report is labeled "Four NovaStar YSPs Paid." This section describes the data in Table 7 and concludes that "the YSPs for those loans are in line with industry practice." Dkt. 97 at 6. This is responsive to Imal Scott's statements regarding his willingness to broker the loans for less and should not be stricken.

The sixth section of the Olson report is labeled "Competition for Subprime Loans" and contains two paragraphs. The first paragraph describes the competitiveness of the subprime loan market. Dkt. 97 at 6. This evidence gives context to Imal Scott's statements regarding borrower efforts to compare loan offers. *See* Dkt. 102 at 7. The paragraph also states that borrowers can receive loan offers online. The second paragraph contends that borrowers do not need to know the YSP in order to compare loan offers. These statements contradict Imal Scott's contention that borrowers need written disclosure of the YSP amount in order to compare loan offers and decide on a particular lender or broker. *See id.*

The seventh section of the Olson report is titled "Impact of Prohibitions on YSPs to Brokers" and contains one paragraph. Dkt. 97 at 7-8. This section opines that if brokers were replaced by retail mortgage lenders, interest rates and fees would increase. *Id.* at 7. This section also concludes that borrowers would be forced to buy smaller houses, or would not be able to buy houses at all, if brokers were not paid yield spread premiums. *Id.* at 8. These statements rebut Imal Scott's conclusion that YSPs are disadvantageous to borrowers. This section should not be stricken.

**C. AWARD OF FEES AND COSTS**

The plaintiffs seek an award of fees and costs under Federal Rule 16(f) for failure to obey a scheduling or pretrial order. To the extent that the Olson report does not constitute a rebuttal of the Scott report, it is untimely. The Court having concluded that these portions of the report should be stricken, an award of fees and costs would be overly punitive and unjust. *See* Fed. R. Civ. P. 16(f) (judge shall award expenses and costs for failure to obey scheduling or pretrial order

ORDER
Page 7

unless noncompliance was substantially justified or award of expenses would be unjust). This portion of the motion should be denied.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' Motion to Strike Defendant Novastar's Late Disclosure of "Rebuttal" Expert Witness (Dkt. 101) is **GRANTED in part** and **DENIED in part** as provided herein.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 26th day of February, 2007.

Robert J. Bryan
United States District Judge

ORDER
Page 8