UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAMERON PIERCE and PATRICIA PIERCE, husband and wife; KAREN KIRBY, a single woman; MARY J. RAY, a single woman, GREGORY SHERMAN and PAULA SHERMAN, husband and wife, MICHAEL LEPAGE and GERTRUDE LEPAGE, husband and wife; on behalf of themselves and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>NOVASTAR MORTGAGE, INC., a foreign corporation,<br><br>Defendant. | CASE NO. C05-5835RJB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. 103). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The class plaintiffs are all borrowers who engaged in loan transactions with defendant NovaStar and claim to have been deceived by NovaStar's failure to adequately disclose its payment of broker fees known as "yield spread premiums" ("YSP") on good faith estimates. The plaintiffs brought suit alleging that the failure to provide written disclosure of the YSPs charged

ORDER
Page 1

on their loans resulted in higher interest rates on their loans and violated Washington's Consumer Protection Act ("CPA"), 19.86 *et seq.*

On October 31, 2006, the Court certified a class in this matter pursuant to Federal Rule 23(b)(3). Dkt. 74. The class is defined as follows:

> An opt-out class that includes every borrower satisfying the following requirements:
>
> (1) the borrower entered into a federally-regulated mortgage loan that was subject to the requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. ("RESPA") and secured by property within the State of Washington, at any time from December 30, 2001, to the present;
>
> (2) in connection with the transaction, NovaStar paid a yield spread premium ("YSP") to the borrower's mortgage broker;
>
> (3) in connection with the transaction, neither NovaStar nor the broker **adequately disclosed** to the borrower the YSP on a good faith estimate dated no later than three days after the date on which NovaStar received the loan application or, in the case of a loan application received fewer than three days before the borrower signed final loan documents, the date on which the borrower signed final loan documents; and
>
> (4) in connection with the transaction, the borrower paid the mortgage broker compensation in addition to the YSP that NovaStar paid to the broker.

Dkt. 86 at 5-6 (emphasis added).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### III. DISCUSSION

The plaintiffs move for partial summary judgment, contending that three types of YSP disclosures do not satisfy NovaStar's obligations under the Real Estate Settlement Procedures Act ("RESPA") and Washington's Consumer Loan Act ("CLA") as a matter of law and that these types of disclosures constitute a *per se* violation of the CPA. Dkt. 103 at 8. Specifically, the plaintiffs seek partial summary judgment regarding (1) good faith estimates that do not mention yield spread premiums; (2) good faith estimates that list the yield spread premium as a possible range, starting with "0%," and itemize the amount as "$0.00"; and (3) good faith estimates that list the yield spread premium as a possible range, starting with "0%," and do not list the actual percentage or dollar amount. Dkt. 103 at 2.

## A. THE CONSUMER PROTECTION ACT

The plaintiffs' Consumer Protection Act claim is premised upon alleged violations of the CLA, which requires written disclosures and compliance with RESPA's written disclosure requirements. Dkt. 47 at 5.

The CPA creates a private cause of action. RCW 19.86.090. The elements of a private CPA violation are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). The first two elements may be proved through direct evidence or may be established by a showing that the alleged act constitutes a *per se* unfair trade practice. A *per se* unfair trade practice exists when, by statute, the legislature declares an unfair or deceptive act in trade or commerce and the statute has been violated. *Id.* at 786. A violation of the CLA, including its written disclosure requirements, is a violation of the first and second elements of the CPA. RCW 19.86.020.

## B. DISCLOSURE REQUIREMENTS UNDER THE CLA AND RESPA

Failure to provide certain written disclosures is a violation of the CLA. RCW 31.04.102(2) ("[T]he licensee shall provide to each borrower . . . a written disclosure . . . of all fees and costs that the borrower is required to pay in connection with obtaining a loan from the licensee."); RCW 31.04.027(6). In addition to its own disclosure requirements, the CLA also requires adherence to federal and state disclosure requirements. RCW 31.04.027(6). Specifically, the CLA's disclosure obligations require compliance with RESPA. *See* WAC 208-620-510(1) (requiring compliance with federal and state statutes referred to in WAC 208-620-505, which references RESPA and other statutes).

### 1. Application of the CLA

NovaStar contends that the Consumer Loan Act does not apply to the plaintiffs' loans because they are not high interest loans. Dkt. 113 at 7. Application of the CLA is governed by the following provision:

> Each loan made to a resident of this state by a licensee is subject to the authority and restrictions of this chapter, **unless such loan is made under the authority of another license issued pursuant to a law of this state or under other authority of a law of this state**.

RCW 31.04.025 (emphasis added). NovaStar admits that is a licensee under the CLA but contends that the plaintiffs' loans did not bear high interest rates and were made pursuant to the Mortgage Brokers Practices Act ("MBPA"), rather than the CLA. Dkt. 113 at 8-9.

To demonstrate that the plaintiffs' loans are made pursuant to the MBPA and therefore not governed by the CLA, NovaStar contends that it is entitled to two exemptions from the MBPA. As explained more fully below, even if the Court were to accept NovaStar's contention that **exemption from** the MBPA demonstrates that NovaStar's loans are **pursuant to** the MBPA, NovaStar fails to demonstrate that it is exempt from the MBPA.

First, NovaStar contends that it is an affiliate of a real estate investment trust and therefore exempt under RCW 19.146.020(1)(a)(I):

> (1) Except as provided under subsections (2) through (4) of this section, the following are exempt from all provisions of this chapter:
>
> (a)(I) Any person doing business under the laws of the state of Washington or the United States, and any federally insured depository institution doing business under the laws of any other state, relating to commercial banks, bank holding companies, savings banks, trust companies, savings and loan associations, credit unions, insurance companies, or real estate investment trusts as defined in 26 U.S.C. Sec. 856 and the affiliates, subsidiaries, and service corporations thereof; and
>
> (ii) Subject to the director's written approval, the exclusive agents of an affiliate of a bank that is wholly owned by the bank holding company that owns the bank;

Dkt. 113 at 9; RCW 19.146.020(1). On this point, NovaStar's argument is woefully brief: "NovaStar is an affiliate of NovaStar Financial, Inc., which has elected for tax purposes to be treated as a real estate investment trust under 26 U.S.C. §856." *See* Dkt. 113 at 9. NovaStar offers no evidence that it is an affiliate of NovaStar Financial, Inc. or that NovaStar Financial, Inc. is a real estate investment trust. NovaStar fails to demonstrate that it is exempt from the MBPA in this regard.

ORDER
Page 5

Second, NovaStar contends that it is "an approved seller/servicer and subject to audit by the Federal National Mortgage Association ('Fannie Mae') and the Federal Home Loan Mortgage Corporation ('Freddie Mac')" and therefore exempt under RCW 19.146.020(1)(g), which exempts "[a]ny mortgage broker approved and subject to auditing by the federal national mortgage association or the federal home loan mortgage corporation." Dkt. 113 at 9-10; RCW 19.146.020(1)(g). As authority for this contention, NovaStar cites a letter from NovaStar's Associate General Counsel to the Washington Department of Financial Institutions. *See* Dkt. 113-2, Exh. 4. This letter is not signed under oath and does not constitute evidence. Based upon the evidence and argument presented thus far, the Court cannot determine that NovaStar is exempt from the MBPA under RCW 19.146.020(1)(a)(I) and (1)(g) as a matter of law.

More importantly, NovaStar's contention that the rates of interest on the plaintiffs' loans demonstrate that the CLA does not apply conflicts with regulations implementing the CLA. Those regulations provide as follows: "Once I am licensed, does the act apply to all loans I make or only those above twelve percent? All loans you make as a licensee are subject to the authority and restrictions of the act including the provisions relating to the calculation of the annual fee." WAC 208-620-240. NovaStar therefore fails to demonstrate that its loans were made pursuant to the MBPA, rather than the CLA.

**2. Compliance With CLA Disclosure Requirements**

The CLA requires "a written disclosure containing an itemized estimation and explanation of all fees and costs **that the borrower is required to pay** in connection with obtaining a loan from the licensee." RCW 31.04.102(2) (emphasis added). NovaStar maintains that this disclosure requirement does not apply to yield spread premiums, which both parties agree are paid by the lender. Dkt. 113 at 11. The plaintiffs contend that their payments of higher interest rates facilitated payment of the yield spread premiums and that a yield spread premium is therefore a cost that the borrower is indirectly required to pay. Dkt. 103 at 12-13.

ORDER
Page 6

The plaintiffs cite *Barbosa v. Target Mortg. Corp.*, 968 F. Supp. 1548, 1556 (S.D.Fla. 1997), and a Department of Housing and Urban Development ("HUD") Statement of Policy interpreting RESPA for the proposition that a yield spread premium is a fee paid by the borrower. In a 1999 HUD Statement of Policy, the HUD states that "in analyzing whether lender payments to mortgage brokers comport with the requirements of Section 8 of RESPA (regarding kickbacks and broker compensation), . . . the totality of the compensation to the mortgage broker for the loan must be examined." Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10080-01, 10086 (Mar. 1, 1999) (to be codified at 24 C.F.R. pt. 3500). This statement is based upon a recognition that "[a]ll compensation to the broker is either paid by the borrower in the form of fees or points, directly or by addition to principal, or is derived from the interest rate of the loan paid by the borrower." *Id*. In a Section 8 case from another district, the court held that "persons charged for the settlement service" could include both parties charged directly and parties charged indirectly through the payment of higher interest rates. *Barbosa*, 968 F. Supp. at 1556.

The Court should decline to apply this reasoning to the CLA, the plain language of which is explicitly limited to fees **the borrower** is required to pay. If the legislature of the State of Washington intended the CLA to require disclosure of payments of fees paid by lenders, it could have done so explicitly by referring to fees "the borrower or lender is required to pay" or by excluding any reference to the party making the payments. Instead, the legislature plainly and explicitly limited the CLA's disclosure requirements to payments made by borrowers.

Other courts in this circuit have interpreted language similar to the CLA provision quoted above and found that yield spread premiums were not included. *See Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201, (9th Cir. 2003) (yield spread premiums do not constitute fees "fees "collect[ed] from the mortgagor"); *Geraci v. Homestreet Bank*, 203 F. Supp. 2d 1211, 1213 (W.D.Wash. 2002) (yield spread premiums do not constitute fees "charged against, or paid by the borrower"). The Court should decline to broaden the plain language of the CLA and therefore

ORDER
Page 7

declines to grant partial summary judgment on the claim that NovaStar violated the Consumer Loan Act's requirement of disclosure of fees and costs borrowers are required to pay.

### 3. Compliance With RESPA Disclosure Requirements

The CLA also requires adherence to RESPA disclosure requirements. RCW 31.04.027(6); WAC 208-620-510(1). RESPA requires that borrowers be provided a good faith estimate listing the "amount **or** range" of settlement charges within three days of receiving a loan application. *See* 12 U.S.C. §2604(c), 24 C.F.R. §3500.7(c) (emphasis added). To comply with RESPA, a good faith estimate must disclose the yield spread premium. *See* 24 C.F.R. §3500, App. A, § L (Settlement charges include "indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction" and "mortgage broker fee[s]."); *Anderson v. Wells Fargo Home Mortg., Inc.*, 259 F. Supp. 2d 1143, 1146 (W.D.Wash. 2003) ("RESPA unambiguously requires lenders . . . to disclose to a loan applicant a variety of information about the proposed loan, including the fact and amount of any YSP to be paid outside closing to the broker by the lender.").

The plaintiffs contend that RESPA requires disclosure of whether a YSP will be charged. Dkt. 103 at 11. The plaintiffs cite *Anderson*, 259 F. Supp. 2d at 1146, for this proposition. In *Anderson*, the lender argued that the borrower could have deduced the amount of the YSP from the disclosure of the inflated interest rate. *Anderson*, 259 F. Supp. 2d at 1147. The court rejected this argument as "simply ignor[ing] the requirement of a factual, intelligible disclosure." *Id.* The *Anderson* court stated the law as follows: "RESPA unambiguously requires lenders . . . to disclose to a loan applicant a variety of information about the proposed loan, including the **fact and amount** of any YSP . . . ." *Id.* at 1146 (emphasis added). The court cited 12 U.S.C. §2604(c) and 24 C.F.R. §3500.7(b), (c) as support for this statement. *Id.* These provisions do not explicitly require disclosure of both the amount of the YSP and the fact that a YSP will be charged. *See* 12 U.S.C. §2604(c) ("amount or range of charges for specific settlement services the borrower is likely to incur"); 24 C.F.R. §3500.7(c) ("A good faith estimate consists of an

ORDER
Page 8

estimate, as a dollar amount or range, of each charge . . . ."). As noted by the defendant, the *Anderson* court was faced with a complete lack of disclosure of the YSP and not, as is the case here, with a disclosure of a range suggesting that a YSP might not be charged at all. The plaintiffs offer no other authority for the notion that disclosure of a range beginning with "0%" is inadequate under RESPA. With this in mind, the Court turns to the named plaintiffs' good faith estimates to determine whether partial summary judgment is proper.

### a. Good Faith Estimates That Do Not Mention Yield Spread Premiums

The plaintiffs seek a ruling that good faith estimates making no mention of yield spread premiums are inadequate as a matter of law. Dkt. 103 at 13. As examples of this type of good faith estimate, the plaintiffs cite the good faith estimates signed by Cameron and Patricia Pierce (Dkt. 27-4, Exh. 10 at 2) and Karen Kirby (Dkt. 27-4, Exh. 17 at 29). These documents list neither an amount nor a range of YSP.

The parties contest whether the Pierces and Ms. Kirby received other good faith estimates listing the YSP. Dkt. 103 at 4, 5; Dkt. 113 at 13. The plaintiffs appear not to seek summary judgment on the issue of whether NovaStar violated the CPA with respect to the Pierces and Ms. Kirby but only on the issue of whether the good faith estimates actually signed by the plaintiffs are inadequate as a matter of law:

> In this motion, plaintiffs seek a ruling as a matter of law that NovaStar is required to comply with the CLA and that each of these three types of GFEs provided to plaintiffs is legally insufficient to satisfy NovaStar's legal obligation to timely disclose both the fact *and* amount of the YSP to its borrowers in writing. As a matter of law, such GFEs contravene the CLA and are *per se* unfair and deceptive acts under the Consumer Protection Act, RCW 19.86 ("CPA").

Dkt. 103 at 2. In any event, the Pierces and Ms. Kirby testified under oath that they did not receive any good faith estimates other than the ones they signed, and there is no testimony or evidence to contradict these statements. *See* Dkt. 104, Exh. 2 at 8 (Mr. Pierce's deposition); Dkt. 104, Exh. 3 at 10-11 (Ms. Pierce's deposition); Dkt. 104, Exh. 4 at 17 (Kirby deposition); Dkt. 113-2, Exh. 1. Good faith estimates that make no mention of any YSP payment, such as those signed by the Pierces and Ms. Kirby, are inadequate under RESPA, and therefore violate the CLA

ORDER
Page 9

and are *per se* unfair and deceptive under the Washington Consumer Protection Act. The motion should be granted in this respect.

### b. Good Faith Estimates With a YSP Ranging From "0%" and Totaling "$0.00" or Not Including a Total Dollar Amount

The plaintiffs seek a ruling that good faith estimates listing the range of YSP as beginning with "0%" and either a dollar amount of "$0.00" or no dollar amount whatsoever are inadequate as a matter of law. The plaintiffs cite the good faith estimate signed by Gregory and Paula Sherman and the unsigned good faith estimate provided to Ms. Kirby as examples. Dkt. 27-6, Exh. 29 at 5 (good faith estimate signed by the Shermans and listing the "mortgage broker compensation" as "0-4%" and "0.00." ); Dkt. 27-5, Exh. 20 at 5 (unsigned good faith estimate bearing Ms. Kirby's name and stating, "A mortgage broker fee of 0.000% - 3.000% is being paid by the lender for this transaction.").

A good faith estimate is the lender's good faith prediction of charges "[t]hat the borrower will *normally* pay or incur . . . based upon *common practice* in the locality of the mortgaged property." 24 C.F.R. §3500.7(c)(2) (emphasis added). Such estimates "must be made in *good faith* and bear a *reasonable relationship* to the charge a borrower is *likely* to be required to pay at settlement, and must be *based upon experience* in the locality of the mortgaged property." *Id.* (emphasis added). This language demonstrates that a good faith estimate is indeed merely an estimate and not a promise or a guarantee. The uncertain nature of a good faith estimate is tempered by the requirement that the estimate be made in good faith, based upon the common practice and experience in the locality of the property, and bear a reasonable relationship to the charges the borrower will likely pay.

Even if the Court accepts the *Anderson* court's reading of RESPA as requiring disclosure of not just the "amount or range" but also the fact that a YSP will be charged, the plaintiffs fail to demonstrate that NovaStar's estimation that a borrower would not, or may not, be required to pay a YSP is inadequate or otherwise unlawful. In other words, the plaintiffs fail to demonstrate that this estimation was not in good faith or that NovaStar was not permitted to pay a YSP due to

ORDER
Page 10

such a disclosure. The plaintiffs attempt to demonstrate that these disclosures were not in good faith by alleging that at the time the disclosures were made, the YSP was already determined and could have been disclosed definitively rather than as a range. Dkt. 114 at 11. With respect to the Shermans, the plaintiffs offer evidence that NovaStar committed to specific loan terms, provided the Shermans' broker complied with certain requirements, on June 11, 2003, before the Shermans signed their good faith estimate. Dkt. 104, Exh. 6 at 23 (showing commitment date for Sherman loan); Dkt. 115, Exh. F at 17 (explaining "loan commitments"); Dkt. 27-6, Exh. 29 at 5 (good faith estimate signed by the Shermans on June 3, 2003). While this evidence suggests that NovaStar knew the YSP, at least with more particularly than the range of 0-4% suggests, before closing, it does not demonstrate that NovaStar knew the YSP rate at the time of the good faith estimate such that the estimate was not made in good faith.

The plaintiffs also profess to offer testimony from the Shermans' broker that "she knew the YSP before she even got the loan commitment." Dkt. 114 at 11. The portion of the deposition cited states as follows:

> At the point when I'm getting a loan commitment on a loan, I've already determined what the pricing is going to be, and the client and I have already agreed verbally and then in writing, [sic] you have a Good Faith Estimate, exactly what the fees are going to be associated with the transaction. So I'm not proceeding to get a loan commitment until I've discussed that verbally and in writing.

Dkt. 115, Exh. E at 14. This statement of the broker's general practices does not establish that the broker knew the exact amount of the YSP at the time the Shermans signed the good faith estimate disclosing the "mortgage broker compensation" merely as "0-4%" and "0.00." Moreover, this statement is contradicted by other evidence in the record creating a genuine issue of material fact. *See* Dkt. 113-3, Exh. 7 at 5 (Senior Vice President of NovaStar contending that at the time disclosures are made, brokers may not know whether a YSP will be charged or how much such a payment would be). The plaintiffs contest this evidence because the witness lacks "personal involvement with the Sherman loan." Dkt. 114 at 11. This argument goes to the weight of the evidence. The Court will not weigh the evidence at the summary judgment stage. There being a

ORDER
Page 11

genuine issue of material fact as to whether these YSP disclosures conflict with NovaStar's knowledge at the time, the Court cannot yet determine as a matter of law that these good faith estimates were not made in good faith. The motion should be denied in this respect.

**C. DISCLOSURE REQUIREMENTS UNDER THE MBPA**

The Plaintiffs' Motion for Partial Summary Judgment seeks ruling as a matter of law that certain types of good faith estimates are inadequate as matter of law on two separate grounds: "Plaintiffs request a ruling that these GFEs [good faith estimates] provided to the Pierces, Ms. Kirby and the Shermans were all inadequate as a matter of law to satisfy NovaStar's disclosure obligations **under the CLA and RESPA (incorporated through the CLA)**." Dkt. 103 at 8 (emphasis added). The motion did not address the adequacy of NovaStar's disclosures under the Mortgage Brokers Practices Act. NovaStar raised the MBPA as support for the contention that the plaintiffs' loans were not bound by the CLA's disclosure requirements. Dkt. 113 at 8-9. The plaintiffs replied that if NovaStar was not bound by the CLA because its loans were made pursuant to the MBPA, the good faith estimates at issue were nevertheless unfair and deceptive under the CPA for violation of MBPA disclosure requirements. Dkt. 114 at 6. This apparent attempt to provide an alternative ground upon which to grant the plaintiffs' requested relief led NovaStar to file a surreply explaining its obligations under the MBPA. Dkt. 118 at 1.

NovaStar acknowledges that the surreply was not filed pursuant to the Local Rules of this district. *Id.* at 1 n.1. The plaintiffs requested a conference call with the Court to seek permission to file a response to the surreply. The plaintiffs were permitted to respond to NovaStar's surreply.

The Court has considered both NovaStar's surreply and the plaintiffs' response thereto. Because the plaintiffs' motion did not seek partial summary judgment on whether NovaStar violated the MBPA, this issue is not properly before the Court. The Court should therefore decline to rule whether the plaintiffs' good faith estimates contained adequate disclosures under the MBPA.

ORDER
Page 12

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Dkt. 103) is **GRANTED in part** and **DENIED in part** as provided herein.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 15th day of March, 2007.

/s/ Robert J. Bryan
Robert J. Bryan
United States District Judge