UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAMERON PIERCE and PATRICIA PIERCE, husband and wife; KAREN KIRBY, a single woman; GREGORY SHERMAN and PAULA SHERMAN, husband and wife, MICHAEL LEPAGE and GERTRUDE LEPAGE, husband and wife; on behalf of themselves and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>NOVASTAR MORTGAGE, INC., a foreign corporation,<br><br>Defendant. | CASE NO. C05-5835RJB<br><br>ORDER DENYING IN PART AND RE-NOTING IN PART DEFENDANT NOVASTAR'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant NovaStar's Motion for Summary Judgment (Dkt. 112). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein. Both parties have requested oral argument, but the Court determines that the matters raised by the motion are suitable for disposition by reference to the file.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The class plaintiffs are all borrowers who engaged in loan transactions with defendant NovaStar and claim to have been deceived by NovaStar's failure to adequately disclose its payment of broker fees known as "yield spread premiums" ("YSP") on good faith estimates. The

plaintiffs brought suit alleging that the failure to provide written disclosure of the YSPs charged on their loans resulted in higher interest rates on their loans and violated Washington's Consumer Protection Act ("CPA"), 19.86 *et seq.*

On October 31, 2006, the Court certified a class in this matter pursuant to Federal Rule 23(b)(3). Dkt. 74. The class is defined as follows:

> An opt-out class that includes every borrower satisfying the following requirements:
>
> (1) the borrower entered into a federally-regulated mortgage loan **that was subject to the requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. ("RESPA")** and secured by property within the State of Washington, at any time from December 30, 2001, to the present;
>
> (2) in connection with the transaction, **NovaStar paid a yield spread premium ("YSP")** to the borrower's mortgage broker;
>
> (3) in connection with the transaction, neither NovaStar nor the broker adequately disclosed to the borrower the YSP on a good faith estimate dated no later than three days after the date on which NovaStar received the loan application or, in the case of a loan application received fewer than three days before the borrower signed final loan documents, the date on which the borrower signed final loan documents; and
>
> (4) in connection with the transaction, the borrower paid the mortgage broker compensation in addition to the YSP that NovaStar paid to the broker.

Dkt. 86 at 5-6 (emphasis added).

On March 15, 2007, the Court ruled as a matter of law that good faith estimates that make no mention of any YSP payment, such as those signed by the Pierces and Ms. Kirby, are inadequate under RESPA, and therefore violate the CLA and are *per se* unfair and deceptive under the Washington Consumer Protection Act. Dkt. 126 at 9-10. NovaStar now seeks summary judgment on the following grounds: (1) the plaintiffs cannot prove that they were injured by the alleged non-disclosure of the YSPs on their loans; (2) the LePage loan was a secondary market transaction that did not require disclosure; and (3) the CPA does not apply to the Pierce loan because Mr. Pierce is a sophisticated business person outside the protection of the CPA. Dkt. 112 at 5.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## III. DISCUSSION

### A. INJURY

The elements of a CPA violation are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). NovaStar moves for summary judgment on the grounds that none of the plaintiffs can satisfy the fourth element because none suffered injury as a result of the alleged failure to disclose the YSPs on their loans.

Specifically, NovaStar contends that the plaintiffs cannot demonstrate that their brokers would have agreed to a lower interest rate without a concomitant increase in fees. Dkt. 112 at 10. As support for this contention, NovaStar cites testimony from the Sherman's broker, who would not have brokered the loan for a lower interest rate without charging a higher fee (Dkt. 112-3, Exh. 3 at 4). Even if none of the plaintiffs' brokers would have brokered the loan at a lower interest rate without charging higher fees, the plaintiffs may still be able to demonstrate injury with proof that other brokers would have offered lower interest rates. *See* Dkt. 51 at 2 (A different broker would have accepted 2% as compensation for the Sherman loan without also requiring a YSP.). Several plaintiffs testified that if they had known about the YSPs on their loans, they would have tried to further negotiate for a lower interest rate or removal of the fee. *See* Dkt. 112-2, Exh. 7 at 10 (Ms. Kirby); Dkt. 123, Exh. 1 at 8 (Ms. Sherman); Dkt. 123 Exh. 2 at 12-13 (Mr. Pierce); Dkt. 123, Exh. 8 at 37 (Ms. LePage). NovaStar also cites testimony from Ms. LePage, who testified that she did not know whether she could have obtained a loan at a lower interest rate (Dkt. 112-3, Exh. 4 at 8). This testimony highlights that there is a genuine issue of material fact as to whether the plaintiffs will be able to establish that they could have obtained loans at lower interest rates.

NovaStar also contends that the plaintiffs could have, but did not, comparison shop for lower interest rates. Dkt. 112 at 11. To the jury, this fact may evidence a lack of a tangible injury.

On the other hand, the jury could conclude that the plaintiffs' failure to comparison shop resulted from a lack of disclosure by the defendant. The plaintiffs' failure to comparison shop does not mandate summary judgment on the question of whether the plaintiffs suffered injury.

Finally, NovaStar contends that Ms. Kirby, in particular, cannot prove that she was injured because she received a below par interest rate. Dkt. 112 at 16. NovaStar cites the deposition testimony of Imal Scott, the plaintiffs' expert, in which Mr. Scott admits that "under most circumstances," a below par rate is "a good deal" for the borrower. Dkt. 112-2, Exh. 2 at 12. NovaStar has not established that Ms. Kirby could not have received an even lower interest rate from NovaStar or from another lender. There remains a genuine issue of material fact as to whether Ms. Kirby suffered injury in the form of an inflated interest rate.

**B. SECONDARY MARKET TRANSACTION**

The first two elements of a CPA violation may be proved through direct evidence or may be established by a showing that the alleged act constitutes a *per se* unfair trade practice. A *per se* unfair trade practice exists when, by statute, the legislature declares an unfair or deceptive act in trade or commerce and the statute has been violated. *Id.* at 786. The legislature has declared that violation of the CLA is a violation of the first and second elements of the CPA. RCW 19.86.020. The CLA requires compliance with RESPA. *See* WAC 208-620-505, 510(1). Secondary loan transactions are exempt from RESPA:

> (a) Applicability. RESPA and this part apply to all federally related mortgage loans, except for the exemptions provided in paragraph (b) of this section.
>
> (b) Exemptions.
>
> . . .
>
> > (7) Secondary market transactions. A bona fide transfer of a loan obligation in the secondary market is not covered by RESPA and this part, except as set forth in section 6 of RESPA (12 U.S.C. 2605) and § 3500.21. In determining what constitutes a bona fide transfer, HUD will consider the real source of funding and the real interest of the funding lender. Mortgage broker transactions that are table-funded are not secondary market transactions. Neither the creation of a dealer loan or dealer consumer credit contract, nor the first assignment of such loan or contract to a lender, is a secondary market transaction (see § 3500.2.)

24 C.F.R. §3500.5(b)(7). NovaStar contends that the LePage loan is a secondary market transaction that falls outside of the scope of RESPA and therefore cannot support the plaintiffs' CPA claim.

Two cases from other circuits have addressed this issue, and their analyses offer some insight into the issue. In *Chandler v. Norwest Bank Minnesota, Nat. Ass'n.*, 137 F.3d 1053, 1055 (8th Cir. 1998), the mortgagors closed their loan with Custom Mortgage, Inc. on January 26, 1996. The Chandlers' loan had been assigned on January 22 to Norwest Bank Minnesota. *Chandler*, 137 F.3d at 1054. On January 31, the loan was purchased from Custom. *Id.* at 1055. The *Chandler* court held that Custom, the original lender, was the source of the funds, noting that the lender closed in its own name and used its own line of credit to close the loan. *Id.* at 1057.

Relying on *Chandler*, the court in *Moreno v. Summit Mortg. Corp.*, 364 F.3d 574 (5th Cir. 2004), concluded that the sale of a loan was a secondary market transaction even though the lender and the purchaser of the loan may have agreed to the sale before closing. In *Moreno*, the Morenos closed their loan with Summit Mortgage Corporation on March 19 or 20. *Moreno*, 364 F.3d at 575. On March 19, Summit assigned the loan to First Nationwide Mortgage Corporation. *Id.* Summit and First Nationwide had an agreement governing the sale of loans by Summit to Nationwide. *Id.* Summit and First Nationwide had an agreement whereby First Nationwide issued a "commitment confirmation" if the parties agreed on a purchase price. *Id.* After issuance of the commitment, Summit was obligated to tender the loan for purchase to First Nationwide, but First Nationwide was not required to purchase the loan and could reject the loan for failure to meet the requirements of a "Lender Guide." *Id.* The court held that the assignment of the loan to First Nationwide was a secondary market transaction. *Id.* at 577. The court noted the following: the original lender did not fund the loan with money from the assignee but instead took out a loan for which it was solely responsible and the loan was closed in the name of the original lender and not in the name of the assignee. *Id.*

The facts pertaining to the LePage loan are similar to those in *Moreno.* Gertrude and Michael LePage closed their loan with CLS Mortgage, Inc. ("CLS Mortgage" or "CLS") on August 25, 2003. Dkt. 112-4, Exh. 9 at 15. CLS has an agreement with NovaStar that allows CLS to offer closed and funded loans for NovaStar to purchase. *Id.* at 14-15. CLS funded the loan with a line of credit with which NovaStar is not connected and for which CLS was solely responsible. *Id.* at 15. On August 29, 2003, CLS Escrow paid the disbursements on the LePage loan and paid off the LePages' previous lender. *Id.* On September 4, 2003, NovaStar wired funds to purchase the LePage loan from CLS Mortgage, but it was not required to do so. *Id.* The sale of the LePage loan closely resembles the sale of the loan in *Moreno* because CLS Mortgage funded the LePage loan using a line of credit for which CLS was solely responsible and because the loan was closed in the name of CLS Mortgage.

The plaintiffs' evidence does not refute this conclusion. The plaintiffs offer evidence that NovaStar had some involvement with the LePage loan before it closed. *See* Dkt. 27, Exh. 33 at 17 ("Purchase Commitment" between CLS Mortgage and NovaStar identifying "loan commitment date" as July 28, 2003.); Dkt. 27, Exh. 35 at 21 ("Lock-In Confirmation/Correspondent Demand" signed August 8, 2003); Dkt. 123, Exh. 13 at 56-63. The plaintiffs also offer a Correspondent Lender Purchase and Sale Agreement between CLS Mortgage and NovaStar. Dkt. 123, Exh. 14 at 64. From the copy provided, it is unclear whether and when this document was executed. The agreement provides that NovaStar has no obligation to purchase a loan from CLS until conditions stated in the Sellers Guide, and other documents, are met. *Id; see also* Dkt. 112-4, Exh. 10 at 18 (NovaStar's agreement with CLS allows CLS "to submit closed loans to NovaStar for possible purchase."). This agreement appears to be substantially similar to the agreement in *Moreno*, and the plaintiffs offer no evidence that NovaStar's involvement in the LePage loan before closing amounted to anything more than was approved by the *Moreno* court. The Court should therefore hold that NovaStar is entitled to

judgment as a matter of law that the LePage loan constitutes a secondary market transaction to which RESPA does not apply.

Having determined that RESPA does not apply to the LePage loan, the Court now turns to the plaintiffs' contention that NovaStar's practices towards the LePages were nevertheless unfair or deceptive under the Consumer Protection Act. Dkt. 122 at 20. Specifically, the plaintiffs contend that even though the term "YSP" typically does not apply to secondary mortgage transactions, failure to disclose fees regarding the LePage loan violates the CPA. *See* Dkt. 112-2, Exh. 2 at 13 (the plaintiffs' expert testifying that the term "yield spread premium" is ordinarily not used in the context of secondary mortgage transactions); Dkt. 112-2, Exh. 11 at 8 (NovaStar's expert's report stating that there was no YSP associated with the LePage loan).

This issue has direct bearing the status of this case as a class action. It appears that the LePage loan does not fit within the definition of the class because the loan did not involve payment of a yield spread premium and the loan was not subject to RESPA. In addition, as the Court has previously noted, determining whether NovaStar violated the CPA without reference to statutes requiring written disclosures may necessitate individual inquiries into individual borrowers' knowledge of the fees charged on their loans and, therefore, decertification of the class. *See, e.g.*, Dkt. 60 at 8. In a footnote, the plaintiffs contend that this case may still proceed as a class action because "NovaStar has never suggested that . . . oral disclosures occurred with respect to the LePage loan or any of the hundreds of other Class loans like theirs." Dkt. 122 n.3. The reply does not address this contention. *See* Dkt. 130.

Because it appears that the plaintiffs may indeed be able to establish that NovaStar committed an unfair or deceptive act or practice with respect to the LePage loan despite that loan not being subject to RESPA, the Court should deny the motion as to the LePages. Because the LePages do not fit the class definition, however, their presence in the case may require either decertification or redefinition of the class. The parties have not yet had an opportunity to be heard on whether the Court should dismiss the LePages without prejudice so that the case may proceed

as a class action or deny summary judgment as to the LePages and decertify or redefine the class. The parties should therefore be given the opportunity to address these questions in supplemental briefing.

**C. CLASS LOANS UNDER WAREHOUSE AGREEMENTS**

In their response, the plaintiffs contend that approximately 550 class member loans closed using NovaStar's warehouse line are not bona fide secondary market transactions. Dkt. 122 at 18-22. NovaStar did not move for summary judgment as to these loans, and the Court does not reach this issue. The Court notes, however, that this issue may determine whether the class meets the numerosity prong of Federal Rule of Civil Procedure 23(a)(1).

**D. BORROWER SOPHISTICATION**

Finally, NovaStar contends that Mr. Pierce is a sophisticated borrower with significant experience in the lending industry and that the plaintiffs therefore cannot demonstrate that NovaStar's conduct affected the public interest as required by the third element under the CPA. Dkt. 112 at 20. As support for this contention, NovaStar cites Mr. Pierce's "bonanza of experience in, and knowledge of, the financial industry." Dkt. 112 at 22. The plaintiffs do not deny Mr. Pierce's work history in the mortgage industry but contend that such history is irrelevant, is a question better left for the jury, or is supportive of their claims. Dkt. 122 at 12.

Under the third element of the CPA, the plaintiffs must demonstrate that the allegedly unfair or deceptive act or practice impacts the public interest. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). The burden of proving this element depends upon the nature of the dispute. In a private dispute, a "breach of a private contract affecting no one but the parties to the contract," the public interest prong depends upon "the likelihood that additional plaintiffs have been or will be injured in exactly the same fashion." *Id.* at 790.

In a consumer transaction, the court must examine several factors:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed

> prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

*Id.*

NovaStar offers authority for its contention that sophisticated parties to a private dispute cannot satisfy the public impact element. *Segal Co. (Eastern States), Inc. v. Amazon.Com*, 280 F. Supp. 2d 1229, 1234 n.5 (W.D.Wash. 2003) ("The statute does not provide extra protection for those individuals who, like plaintiffs, have 'sufficient sophistication to remove them from the class of bargainers subject to exploitation.'); *Pacific Northwest Life Ins. Co. v. Turnbull*, 51 Wn.App. 692, 703 (1998). There are genuine issues of material fact as to the likelihood that additional plaintiffs, such as members of the class, have been or will be injured in the same way that Mr. Pierce was allegedly injured; as to whether NovaStar's conduct was part of a patterned course of conduct; and as to the potential for repetition of NovaStar's conduct with respect to other consumers. The Court should decline to grant summary judgment on this basis.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant NovaStar's Motion for Summary Judgment (Dkt. 112) is **DENIED** except as to Michael and Gertrude LePage, as to which the motion is **RE-NOTED** for consideration on April 13, 2007. On or before April 5, 2007, the plaintiffs may supplement their briefing to address whether the Court should deny Defendant NovaStar's Motion for Summary Judgment (Dkt. 112) as to the LePages and decertify or redefine the class or whether the LePages should be dismissed without prejudice so the class action may proceed under its current definition. The defendant's response, if any, is due April 11, 2007. The plaintiffs' reply, if any, is due April 13, 2007.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 27th day of March, 2007.

Robert J. Bryan
United States District Judge