UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAMERON PIERCE and PATRICIA PIERCE, husband and wife; KAREN KIRBY, a single woman; GREGORY SHERMAN and PAULA SHERMAN, husband and wife, MICHAEL LEPAGE and GERTRUDE LEPAGE, husband and wife; on behalf of themselves and a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>NOVASTAR MORTGAGE, INC., a foreign corporation,<br><br>Defendant. | CASE NO. C05-5835RJB<br><br>ORDER DENYING DEFENDANT NOVASTAR'S MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFFS' RENEWED MOTION TO APPROVE CLASS NOTICE AND CLASS DISTRIBUTION PLAN, AND AMENDING CLASS DEFINITION |

This matter comes before the Court on Defendant NovaStar's Motion for Summary Judgment (Dkt. 112) and the parties' supplemental briefing thereon (Dkt. 160, 172), and on Plaintiffs' Renewed Motion to Approve Class Notice and Class Notice Distribution Plan (Dkt. 128). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The class plaintiffs are all borrowers who engaged in loan transactions with defendant NovaStar Mortgage, Inc. ("NovaStar Mortgage") and claim to have been deceived by NovaStar

ORDER
Page 1

Mortgage's failure to adequately disclose its payment of broker fees known as "yield spread premiums" ("YSP") on good faith estimates. The plaintiffs brought suit alleging that the failure to provide written disclosure of the YSPs charged on their loans resulted in higher interest rates on their loans and violated Washington's Consumer Protection Act ("CPA"), 19.86 *et seq.*

On October 31, 2006, the Court certified a class in this matter pursuant to Federal Rule 23(b)(3). Dkt. 74. The class is currently defined as follows:

> An opt-out class that includes every borrower satisfying the following requirements:
>
> (1) the borrower entered into a federally-regulated mortgage loan **that was subject to the requirements of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. ("RESPA")** and secured by property within the State of Washington, at any time from December 30, 2001, to the present;
>
> (2) in connection with the transaction, **NovaStar paid a yield spread premium ("YSP")** to the borrower's mortgage broker;
>
> (3) in connection with the transaction, neither NovaStar nor the broker adequately disclosed to the borrower the YSP on a good faith estimate dated no later than three days after the date on which NovaStar received the loan application or, in the case of a loan application received fewer than three days before the borrower signed final loan documents, the date on which the borrower signed final loan documents; and
>
> (4) in connection with the transaction, the borrower paid the mortgage broker compensation in addition to the YSP that NovaStar paid to the broker.

Dkt. 86 at 5-6 (emphasis added).

On March 15, 2007, the Court ruled as a matter of law that good faith estimates that make no mention of any YSP payment, such as those signed by the Pierces and Ms. Kirby, are inadequate under RESPA, and therefore violate the CLA and are *per se* unfair and deceptive under the Washington Consumer Protection Act. Dkt. 126 at 9-10.

## A. NOVASTAR'S MOTION FOR SUMMARY JUDGMENT

On February 16, 2007, NovaStar Mortgage moved for summary judgment, in part on the grounds that the LePage loan was a secondary market transaction for which disclosure of broker fees is not required. Dkt. 112 at 16. NovaStar Mortgage did not move for summary judgment as to loans involving warehouse lines of credit, and the Court's ruling therefore did not address the status of such loans in the litigation. Dkt. 140 at 9. With respect to the LePage loan, the Court

ORDER
Page 2

held that "the LePage loan constitutes a secondary market transaction to which RESPA does not apply." Dkt. 153 at 8. The Court further held that summary judgment was nevertheless improper because "the plaintiffs may indeed be able to establish that NovaStar committed an unfair or deceptive act or practice with respect to the LePage loan despite that loan not being subject to RESPA." *Id.* Because the presence of the LePages as class representatives might require decertification or redefinition of the class, the Court allowed the parties to submit supplemental briefing to address "whether the Court should dismiss the LePages without prejudice so that the case may proceed as a class action or deny summary judgment as to the LePages and decertify or redefine the class." *Id.* at 8-9. As invited by the Court, both parties submitted supplemental briefing on these issues, and Defendant NovaStar's Motion for Summary Judgment (Dkt. 112) is now ripe for review.

**B. THE PLAINTIFFS' RENEWED MOTION TO APPROVE CLASS NOTICE**

Also pending before the Court is Plaintiffs' Renewed Motion to Approve Class Notice and Class Notice Distribution Plan (Dkt. 128). The Court reserved its ruling on the motion regarding class notice until after the Court's final ruling on the defendant's Motion for Summary Judgment. Dkt. 153 at 6. This motion is also ripe for the Court's review.

## **II. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative

ORDER
Page 3

evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## III. DISCUSSION

### A. NOVASTAR MORTGAGE'S MOTION FOR SUMMARY JUDGMENT

In response to the Court's ruling on the LePage loan, the plaintiffs propose a change to the class definition that would include loans similar to the LePage loan as well as loans allegedly funded by warehouse lines of credit. Dkt. 160 at 4-5. NovaStar Mortgage urges the Court to decline to redefine the class and contends that loans funded by warehouse lines of credit are subject to the Court's ruling on the LePage loan. Dkt. 172 at 10, 14.

**1. Bona Fide Secondary Market Transactions**

There are apparently 47 loans that are similar to the LePage loan and therefore constitute bona fide secondary market transactions. *See* Dkt. 160 at 13. The plaintiffs propose expanding the definition of the class to include these loans. First, the plaintiffs would substitute "subject to the requirements of Washington law" for "subject to the requirements of RESPA." Dkt. 160 at 12.

Second, the plaintiffs would substitute "money to your mortgage broker in return for negotiating a higher interest loan for you ("Payment")" for "NovaStar paid a yield spread premium ("YSP")." *Id.* NovaStar Mortgage's dispute with the proposed amendment appears to be that the terms "money" and "Washington law" are amorphous. Dkt. 172 at 7. The language proposed by the plaintiffs, while not as precise as the current definition, would enable this case to proceed as a class action and would enable the LePages to remain class representatives. The Court notes that the proposed definition is also more readable for purposes of the Class Notice. The Court should therefore amend the class definition to read as follows:

> (1) You entered into a federally-regulated mortgage loan that was subject to the requirements of Washington law and secured by property within the State of Washington, at any time from December 30, 2001, to the present;
>
> (2) NovaStar paid money to your mortgage broker ("Payment") in return for negotiating a higher interest loan for you;
>
> (3) Neither NovaStar nor the broker adequately disclosed to you the Payment on a good faith estimate dated no later than three days after the date on which NovaStar received the loan application or, if your application was received fewer than three days before you signed final loan documents, the date on which you signed final loan documents; and
>
> (4) You paid the mortgage broker compensation in the form of an "origination fee" or "broker fee" in addition to the Payment that NovaStar paid to the broker.

Having determined that the class should be redefined to include the LePage loan and other bona fide secondary market transactions, the Court should deny Defendant NovaStar's Motion for Summary Judgment (Dkt. 112) as to the LePage loan.

**2. Warehouse Line of Credit Loans**

The parties dispute whether loans funded by warehouse lines of credit are subject to the Court's ruling on the LePage loan. According to the plaintiffs, there are 526 loans funded by warehouse lines of credit. Dkt. 175 at 2. The plaintiffs contend that these loans fit within the current, or proposed amended, class definition and are distinguishable from the LePage loan. While neither party has moved for summary judgment as to these loans, NovaStar Mortgage contends that the Court's ruling on the LePage loans applies to many of these loans. Dkt. 172 at

14.

The majority of these loans involve NovaStar Home Mortgage, Inc. ("NovaStar Home Mortgage"). Dkt. 160 at 7. NovaStar Home Mortgage, which has ceased operations, was both a broker and a lender. Dkt. 172-3, Exh. B at 6. At least some of these loans were funded by a line of credit with NovaStar Capital, Inc. ("NovaStar Capital"), a warehouse lender that provided funds to mortgage lenders. Dkt. 172-3, Exh. D at 14. NovaStar Capital is now known by another name. The precise relationship between these entities - NovaStar Mortgage, NovaStar Home Mortgage, and NovaStar Capital - is not entirely clear. What is clear is that NovaStar Mortgage and NovaStar Home Mortgage, at least, share the same parent company. Dkt. 172-3, Exh. B at 7.

### a. Effect of Ruling on LePage Loan on Warehouse Loans

To determine whether warehouse line of credit loans are subject to the Court's ruling that the LePage loan is not subject to RESPA, the Court must determine whether the loans in this category constitute bona fide secondary market transactions.

Bona fide secondary market transactions are exempt from RESPA. 24 C.F.R. §3500.5(b)(7). In determining whether a loan constitutes a bona fide secondary market transaction, the Court is guided by the principles set forth in *Chandler v. Norwest Bank Minnesota, Nat. Ass'n.*, 137 F.3d 1053, 1055 (8th Cir. 1998) and *Moreno v. Summit Mortg. Corp.*, 364 F.3d 574 (5th Cir. 2004). These cases instruct that the factors to be considered in determining whether a purchase of a mortgage constitutes a bona fide secondary market transaction are as follows: whether the lender closed in its own name, whether the lender used its own line of credit or was solely responsible for the funds used to close the loan, and whether the purchaser was obligated to purchase the mortgage. *Chandler*, 137 F.3d at 1056-57; *Moreno*, 364 F.3d at 577.

There are several issues of fact surrounding the warehouse line of credit loans. For example, it is unclear whether NovaStar Home Mortgage loans were funded with a line of credit

ORDER
Page 6

from NovaStar Capital and purchased by NovaStar Mortgage. *See* Dkt. 157, Exh. 3 at 11, 17 (NovaStar Mortgage is the only approved purchaser of NovaStar Home Mortgage loans involving a NovaStar Capital line of credit.); Dkt. 172-3, Exh. C at 11; Dkt. 172-3, Exh. D at 15, 18-24; Dkt. 172-3, Exh. C at 11 (NovaStar Home Mortgage loans sold to NovaStar Mortgage were funded with NovaStar Home Mortgage's own lines of credit).

In addition, the NovaStar Home Mortgage loans appear to be distinguishable from the loans in *Chandler* and *Moreno*. In this case, the participants to the loan transaction and purchase appear to be closely related. *See* Dkt. 172-3, Exh. B at 7 (NovaStar Mortgage and NovaStar Home Mortgage share the same parent company.); Dkt. 174 at 4; Dkt. 174-2, Exh. F; Dkt. 174-3, Exh. G; Dkt. 157, Exh. 4 at 20 (NovaStar Home Mortgage loan with good faith estimate prepared by NovaStar Mortgage). At this juncture, the Court is unable to determine whether warehouse line of credit loans are subject to the Court's ruling on the LePage loan.

### b. NovaStar Home Mortgage Loans and the Consumer Loan Act

Several pages of the parties' briefing address whether the NovaStar Home Mortgage loans support a claim under the Consumer Loan Act. Dkt. 160 at 10-12; Dkt. 172 at 17-20. As noted previously, the defendant's Motion for Summary Judgment (Dkt. 112) did not seek summary judgment on the NovaStar Home Mortgage loans. While the Court did allow the parties to supplement their briefing on the motion, the purpose of such briefing was to afford the parties "an opportunity to be heard on whether the Court should dismiss the LePages without prejudice so that the case may proceed as a class action or deny summary judgment as to the LePages and decertify or redefine the class." Dkt. 140 at 8-9. Accordingly, whether the plaintiffs can establish a violation of the Consumer Loan Act with respect to the NovaStar Home Mortgage loans is an issue not yet before the Court.

### 3. The LePage Loan and the Consumer Protection Act

The parties' supplemental briefing also addresses whether the LePage loan may support a

ORDER
Page 7

claim under the Consumer Protection Act that is independent from statutory violations of RESPA and the Consumer Loan Act. *See* Dkt. 172 at 11. This issue was fully briefed before the Court invited supplemental briefing and was not a subject upon which the Court sought additional briefing. *See* Dkt. 125 at 19-21 (response addressing whether the LePage loan supports a CPA violation independent from RESPA disclosure requirements); Dkt. 130 at 9-10 (reply addressing same). The Court ruled, "Because it appears that the plaintiffs may indeed be able to establish that NovaStar committed an unfair or deceptive act or practice with respect to the LePage loan despite that loan not being subject to RESPA, the Court should deny the motion as to the LePages." Dkt. 140 at 8. NovaStar Mortgage has not sought reconsideration of this ruling, and the ruling stands. Whether the LePage loan and similar class loans support a violation of the CPA independent from statutory disclosure requirements is an issue for trial.

**B. PLAINTIFFS' RENEWED MOTION TO APPROVE CLASS NOTICE**

In the Order on Plaintiffs' Renewed Motion to Approve Class Notice and Class Notice Distribution Plan, the Court approved the proposed Class Notice as to the thirty-day opt out period. Dkt. 153 at 4. It appears that the latest version of the proposed Class Notice submitted to the Court is largely sufficient, although the Court has changed all references to yield spread premiums to reflect changes to the class definition. The trial date will likely change, an issue to be decided at the Pretrial Conference. The Court has therefore left blank the trial date and the date by which opt-out requests must be received. The Court approves the Class Notice attached hereto.

**C. CLASS DISTRIBUTION**

The plaintiffs also seek approval of their class distribution plan. Dkt. 128 at 4. In the Order on Plaintiffs' Renewed Motion to Approve Class Notice and Class Notice Distribution Plan, the Court noted that disputes over whether certain good faith estimates fall within the definition of the class was an issue better left for summary judgment. Dkt. 153 at 5.

In its supplemental briefing, NovaStar Mortgage seeks exclusion of some of the brokered

ORDER
Page 8

loans for which NovaStar Mortgage was the lender and paid the broker a YSP. Dkt. 172 at 22. NovaStar Mortgage contends that "[t]he vast majority of these brokered loans have yield spread premium disclosures on the Good Faith Estimates." *Id.* The plaintiffs have considered NovaStar Mortgage's position and excluded five brokered loans from the class distribution list. Dkt. 175 at 2. The plaintiffs dispute the adequacy of the good faith estimates for the remainder of the brokered loans. The adequacy of these good faith estimates is an issue for trial. NovaStar Mortgage has not demonstrated that the borrowers on these loans are outside the class definition or should otherwise be excluded from the class distribution list.

NovaStar Mortgage also contends that sending notice to borrowers whose loans involved a warehouse line of credit would be inappropriate because they lack a class representative. Dkt. 172 at 20. Because it appears that no named class representative entered into a loan allegedly funded by a warehouse line of credit, the named representatives may not sufficiently represent the claims of class members who entered into such loans. The plaintiffs contend that this concern may be remedied by appointment of a class representative and propose that the Court appoint Stephen Bowden as a class representative. Dkt. 173 at 7 n.4. NovaStar Mortgage has not had an opportunity to respond to this suggestion, and the Court will hear argument on this issue at the Pretrial Conference. According to the plaintiffs, there are more than 500 class members with such loans. It is probable that at least one of these class members will be able to serve as a class representative. The Court should therefore approve the plaintiffs' proposed class distribution.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant NovaStar's Motion for Summary Judgment (Dkt. 112) is **DENIED** as to as to Michael and Gertrude LePage; Plaintiffs' Renewed Motion to Approve Class Notice and Class Notice Distribution Plan (Dkt. 128) is **GRANTED** as provided herein; and the class definition is **AMENDED** to read as follows:

(1) You entered into a federally-regulated mortgage loan that was subject

ORDER
Page 9

to the requirements of Washington law and secured by property within the State of Washington, at any time from December 30, 2001, to the present;

(2) NovaStar paid money to your mortgage broker ("Payment") in return for negotiating a higher interest loan for you;

(3) Neither NovaStar nor the broker adequately disclosed to you the Payment on a good faith estimate dated no later than three days after the date on which NovaStar received the loan application or, if your application was received fewer than three days before you signed final loan documents, the date on which you signed final loan documents; and

(4) You paid the mortgage broker compensation in the form of an "origination fee" or "broker fee" in addition to the Payment that NovaStar paid to the broker.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 19th day of April, 2007.

/s/ Robert J. Bryan
Robert J. Bryan
United States District Judge

ORDER
Page 10