UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAMERON PIERCE and PATRICIA PIERCE, husband and wife; KAREN KIRBY, a single woman; GREGORY SHERMAN and PAULA SHERMAN, husband and wife, MICHAEL LEPAGE and GERTRUDE LEPAGE, husband and wife; LARRY BROWN, a single man; and RALPH MARTINELLI, a single man, on behalf of themselves and a class of similarly situated individuals,<br><br>                    Plaintiffs,<br><br>       v.<br><br>NOVASTAR MORTGAGE, INC., a foreign corporation,<br><br>                    Defendant. | CASE NO. C05-5835RJB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. 213). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

ORDER
Page 1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The class plaintiffs are all borrowers who engaged in loan transactions with NovaStar Mortgage, Inc. ("NovaStar Mortgage") and claim to have been deceived by NovaStar Mortgage's failure to adequately disclose its payments to brokers on good faith estimates. Some of these payments are "yield spread premiums," which the plaintiffs allege are paid by lenders to brokers as an incentive to induce borrowers to enter into mortgages with higher interests rates. Dkt. 25 at 4, Dkt. 37 at 2. The plaintiffs brought suit alleging that the failure to provide written disclosure of broker payments resulted in higher interest rates on their loans and violated Washington's Consumer Protection Act ("CPA"), RCW 19.86 *et seq*.

On April 19, 2007, the Court amended the class definition to read as follows:

(1) You entered into a federally-regulated mortgage loan that was subject to the requirements of Washington law and secured by property within the State of Washington, at any time from December 30, 2001, to the present;

(2) NovaStar paid money to your mortgage broker ("Payment") in return for negotiating a higher interest loan for you;

(3) Neither NovaStar nor the broker adequately disclosed to you the Payment on a good faith estimate dated no later than three days after the date on which NovaStar received the loan application or, if your application was received fewer than three days before you signed final loan documents, the date on which you signed final loan documents; and

(4) You paid the mortgage broker compensation in the form of an "origination fee" or "broker fee" in addition to the Payment that NovaStar paid to the broker.

Dkt. 177 at 9-10.

The plaintiffs now move for partial summary judgment, asking the Court to rule as a matter of law that NovaStar Mortgage's conduct violated the Consumer Loan Act ("CLA") and

ORDER
Page 2

# (continuing)

was *per se* unfair or deceptive under the CPA as to Plaintiffs Larry Brown and Ralph Martinelli. Dkt. 213 at 2.

**A. LARRY BROWN**

Plaintiff Larry Brown contacted NovaStar Home Mortgage, Inc. ("NovaStar Home") on May 12, 2004, seeking to refinance his home. Mr. Brown was not aware of any distinction between NovaStar Home and NovaStar Mortgage or that NovaStar Mortgage agreed to pay a fee to NovaStar Home. Dkt. 201 at 2; Dkt. 211-2, Exh. 2 at 2, 8. Mr. Brown alleges that this fee resulted in a significantly increased interest rate on his loan. Dkt. 213 at 2.

On May 21, 2004, NovaStar Mortgage issued a "Loan Approval Summary" to NovaStar Home. Dkt. 201, Exh. 4 at 12. This document bears NovaStar's loan identification number and lists NovaStar Home as the "customer." *Id.* The document indicates that Mr. Brown's loan was an adjustable rate loan at an interest rate of 8.2% and that NovaStar Mortgage was to pay NovaStar Home. *Id.* This payment represents three points, or three percent of the loan. *Id.* This document also indicates that a loan similar to Mr. Brown's but without any associated points would have had an interest rate of 6.45%. *Id.*

On May 21, 2004, NovaStar Mortgage issued a Purchase Commitment to NovaStar Home. Dkt. 201, Exh. 5 at 14. The Purchase Commitment lists requirements that NovaStar Home must complete either "Prior to Document," before loan documents are printed, or "Prior to Funding/Closing." *Id*; Dkt. 213 at 3 n.2. The Purchase Commitment lists a good faith estimate disclosing a yield spread premium range of 0-3% as a condition to be completed prior to funding/closing. Dkt. 201, Exh. 5 at 15. This document also indicates a payment from

NovaStar Mortgage to NovaStar Home of 3% of Mr. Brown's loan. *Id.* (listing the points on Mr. Brown's loan as -3.000).

On May 25, 2004, NovaStar Mortgage issued a "Lock-In Confirmation/Broker Demand" for Mr. Brown's loan. Dkt. 201, Exh. 6 at 16. This document lists the "premium yield" payment as $3,150, or 3% of the loan. Dkt. 211-2, Exh. 9 at 23.

Mr. Brown signed his adjustable rate note on May 28, 2004. Dkt. 201, Exh. 7 at 17. NovaStar Home transferred Mr. Brown's mortgage to NovaStar Mortgage through an allonge, also dated May 28, 2004. Dkt. 211-2, Exh. 16 at 31. Mr. Brown contends that he never received a good faith estimate for his loan. *See* Dkt. 211-2, Exh. 1 at 6. The defendant disputes this contention because it was NovaStar Home's policy to provide borrowers with good faith estimates. Dkt. 226, Exh. 8 at 15. Mr. Brown's loan was funded by a "UBS warehouse loan," which was transferred to a line of credit from Wachovia Bank ("Wachovia"). Dkt. 227, Exh. 10 at 3; Dkt. 213 at 4.

Mr. Brown's loan documents do not clearly distinguish between NovaStar Home and NovaStar Mortgage. *See* Dkt. 211-2, Exh. 3 at 13 (good faith estimate listing "yield spread premium from Novastar to Novastar (0-3%)"). Several documents list NovaStar Home as the broker or NovaStar Mortgage as the lender. *See id.* ( identifying NovaStar Home as the broker); Dkt. 211-2, Exh. 9 at 23 (identifying signor on behalf of NovaStar Home as "broker"); Dkt. 211-2, Exh. 11 at 25 (NovaStar Mortgage NovaLinq record for Mr. Brown's loan listing NovaStar Mortgage as the lender); Dkt. 211-2, Exh. 12 at 27 (NovaStar Mortgage's instructions to escrow listing NovaStar Home as the broker); Dkt. 211-2, Exh. 15 at 30 (FEMA form listing NovaStar Mortgage as the lender.). Other documents list NovaStar Home as the

lender. Dkt. 211-2, Exh. 17-21. Mr. Brown signed a document titled "NovaStar's Financial Privacy Policy," which describes the policy of NovaStar Home, NovaStar Mortgage, and other members of "NovaStar's family of companies." Dkt. 211-3, Exh. 23 at 1.

**B. RALPH MARTINELLI**

Plaintiff Ralph Martinelli contacted West Valley Mortgage ("West Valley") in April of 2005, seeking to refinance his home. Dkt. 193 at 2. Mr. Martinelli signed a good faith estimate on April 19, 2005. Dkt. 193, Exh. 2 at 11. The good faith estimate describes Mr. Brown's loan as an adjustable rate mortgage with an interest rate of 8.8% and a mortgage broker fee, payable to West Valley, of 2% or $2,925. *Id.* The good faith estimate has a section entitled "Compensation to Broker," under which the estimate lists "YSP (0-3%)." *Id.* The section for itemizing the YSP has a dollar sign but is otherwise blank. *Id.* According to Ed Bennet, a loan officer for West Valley, the parties were not yet sure whether West Valley would serve as the broker or lender on Mr. Martinelli's loan. Dkt. 224, Exh. 2 at 14.

On April 27, 2005, NovaStar Mortgage issued a Purchase Commitment to West Valley. Dkt. 193, Exh. 3 at 12. The Purchase Commitment lists requirements that West Valley must complete either "Prior to Document," before loan documents are printed, or "Prior to Funding/Closing." *Id*; Dkt. 213 at 3 n.2. This document also indicates a payment from NovaStar Mortgage to West Valley of 1.5% of Mr. Martinelli's loan. Dkt. 193, Exh. 3 at 12 (listing the points on Mr. Martinelli's loan as -1.500).

On May 13, 2005, Mr. Martinelli signed his adjustable rate note. Dkt. 193, Exh. 6. West Valley was listed as the lender. *Id.* at 16. On the same day, West Valley transferred the mortgage to NovaStar Mortgage through an allonge. Dkt. 193, Exh. 5 at 15. NovaStar

Mortgage contends that it purchased Mr. Martinelli's loan in a bona fide secondary market transaction on May 23, 2005. Dkt. 224, Exh. 4 at 19. Mr. Martinelli's HUD-1 settlement statement does not list NovaStar Mortgage's 1.5% payment to West Valley. *See* Dkt. 193, Exh. 7. Mr. Martinelli's loan was financed through a "warehouse" line of credit from NovaStar Capital, Inc. ("NovaStar Capital"). Dkt. 193 at 2. West Valley was permitted to sell loans funded with the NovaStar Capital line of credit only to NovaStar Mortgage. Dkt. 193, Exh. 13 at 34 (defining "take-out investor"), 40 (listing NovaStar Mortgage as the only approved take-out investor). The plaintiffs contend that the initial funding from NovaStar Capital was provided by Wachovia and that NovaStar Mortgage, as a guarantor, was responsible for repayment of the funds extended by NovaStar Capital to West Valley to fund Mr. Martinelli's loan. Dkt. 213 at 8. NovaStar Mortgage is also a guarantor on the agreement between NovaStar Capital and West Valley, and NovaStar Capital was required to seek repayment of the warehouse line of credit from West Valley before seeking repayment from NovaStar Mortgage. *See* Dkt. 225, Exh. 6.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### III. DISCUSSION

The plaintiffs seek a ruling as a matter of law that (1) NovaStar Mortgage violated the Consumer Loan Act, constituting unfair and deceptive acts under Washington's Consumer Protection Act, with respect to Mr. Brown's loan; and (2) NovaStar Mortgage was required to comply with RESPA and failed to do so with respect to both Mr. Brown and Mr. Martinelli. Dkt. 213 at 9, 12, 20.

## A. CONSUMER PROTECTION ACT

The CPA creates a private cause of action. RCW 19.86.090. The elements of a CPA violation are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4) and causes injury to the plaintiff in his or her business or property; and (5) such injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780 (1986). The first two elements may be proved through direct evidence or may be established by a showing that the alleged act constitutes a *per se* unfair trade practice. A *per se* unfair trade practice exists when, by statute, the Legislature declares an unfair or deceptive act in trade or commerce and the statute has been violated. *Id.* at 786.

## B. CONSUMER LOAN ACT

A violation of the CLA, RCW 31.04 *et seq.* , including its written disclosure requirements, is a violation of the first and second elements of the CPA, RCW 19.86 *et seq.*:

> The legislature finds that the practices governed by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW. Any violation of this chapter is not reasonable in relation to the development and preservation of business and is an unfair and deceptive act or practice and unfair method of competition in the conduct of trade or commerce in violation of RCW 19.86.020. Remedies provided by chapter 19.86 RCW are cumulative and not exclusive.

RCW 31.04.208.

Application of the CLA is governed by the following provision:

> Each loan made to a resident of this state by a licensee is subject to the authority and restrictions of this chapter, unless such loan is made under the authority of another license issued pursuant to a law of this state or under other authority of a law of this state.

RCW 31.04.025.

The plaintiffs contend that NovaStar Mortgage violated the Consumer Loan Act with respect to Mr. Brown's loan because NovaStar Mortgage paid NovaStar Home a 3% fee for the the loan, and the two companies are commonly owned by NovaStar Financial, Inc. Dkt. 213 at 9. Upon the defendant's request, the Court's ruling on this portion of the motion is delayed until the parties have had an opportunity to supplement their briefing. *See* Dkt. 231.

**C. RESPA**

Apart from its own requirements, the CLA requires adherence to RESPA disclosure requirements. RCW 31.04.027(6) ("It is a violation of this chapter for a licensee, its officers, directors, employees, or independent contractors, or any other person subject to this chapter to . . . [f]ail to make disclosures to loan applicants as required by RCW 31.04.102 and any other applicable state or federal law."); WAC 208-620-510(1). The plaintiffs contend that the Brown and Martinelli loans were subject to RESPA and that the good faith estimates for these loans do not comply with RESPA.

**1. Applicability of RESPA**

Bona fide secondary market transactions, whereby closed loans are purchased by investors, are exempt from RESPA. 24 C.F.R.§3500.5(b)(7); Dkt. 172-3, Exh. A at 3. "Table-funded" transactions are not secondary market transactions. 24 C.F.R. §§3500.2, 3500.5(b)(7). Table funding is defined as "a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 24 C.F.R. § 3500.2. NovaStar Mortgage contends that the Brown and Martinelli loans are bona fide secondary market transactions not subject to RESPA. Dkt. 223 at 6, 15. The

plaintiffs contend that neither the Brown loan nor the Martinelli loan constitutes a bona fide secondary market transaction and that both loans are subject to RESPA as table-funded loans. Dkt. 213 at 14, 20, 22.

### a. Secondary Market Transactions

To determine whether a transaction constitutes a bona fide secondary market transaction, HUD considers "the real source of funding and the real interest of the funding lender." 24 C.F.R. § 3500.5(b)(7). As the Court has previously recognized, whether the original lender was the source of the funds depends upon consideration of the following: whether the lender closed in its own name and whether the lender used its own line of credit, for which it was solely responsible, to close the loan. Dkt. 140 at 6; s*ee Moreno v. Summit Mortg. Corp.,* 364 F.3d 574, 577 (5th Cir. 2004); *Chandler v. Norwest Bank Minnesota, Nat. Ass'n.,* 137 F.3d 1053, 1057 (8th Cir. 1998). This Court has held that the LePage loan, which was funded with a line of credit for which the lender was solely responsible and was closed in the lender's name, is a bona fide secondary market transaction. Dkt. 140 at 8. To determine whether the Brown and Martinelli loans are also bona fide secondary market transactions, the Court must determine the real source of the funding and the real interest of the lender.

### i. Mr. Brown's Loan

As a threshold matter, the Court notes that Mr. Brown's note lists NovaStar Home as the lender, suggesting that NovaStar Mortgage acquired the loan in a secondary market transaction. *See* Dkt. 201, Exh. 7 at 17 (Mr. Brown's adjustable rate note listing NovaStar Home as the lender). More importantly, the Court notes that the original lender, NovaStar

Home, was not solely responsible for the Wachovia line of credit used to fund Mr. Brown's loan.

The parties agree that Wachovia provided the line of credit that NovaStar Home used to fund Mr. Brown's loan. Dkt. 213 at 12; Dkt. 223 at 5. The parties also agree that NovaStar Mortgage was a signatory to the agreement between Wachovia and NovaStar Home Mortgage. Dkt. 213 at 12; Dkt. 223 at 15. The parties disagree only as to whether NovaStar Mortgage was responsible for the Wachovia line of credit or whether NovaStar Home was solely responsible on the line of credit.

The plaintiffs contend that NovaStar Mortgage was also responsible for the Wachovia line of credit. Dkt. 213 at 12. The plaintiffs cite the promissory note among Wachovia's predecessor and several NovaStar entities. *See* Dkt. 174-2, Exh. F at 60. The promissory note plainly provides that the NovaStar signatories agree, jointly and severally, to pay the principal and interest of each loan. *Id.* NovaStar Mortgage offers a declaration from Rodney Schwatken, Vice President of NovaStar Financial, Inc., in which Mr. Schwatken states that under the agreement with Wachovia, only NovaStar Home was responsible for repayment of the warehouse line of credit funds used on NovaStar Home's loans. Dkt. 227 at 3. Unfortunately, neither the defendant's response nor Mr. Schwatken's declaration cite the portion of the agreement so providing.

The promissory note does not lend itself to such a reading. It refers to NovaStar Mortgage, Inc., NovaStar Financial, Inc., NovaStar Capital, Inc., and NovaStar Home Mortgage, Inc. as "the Companies" and imposes joint and several liability on the companies. Except when referring to a previous promissory note, the agreement does not distinguish among

the NovaStar companies. Other Wachovia agreements similarly fail to distinguish among the NovaStar signatories. *See, e.g.*, Dkt. 174-2, Exh. F at 28 ("Master Netting Agreement"). Mr. Schwatken's self serving affidavit, which is not supported by the factual record, does not create a genuine issue of material fact as to whether NovaStar Mortgage and NovaStar Home were both responsible for payment of the Wachovia line of credit used to fund Mr. Brown's loan. Because NovaStar Home and NovaStar Mortgage were jointly and severally liable for repayment of the Wachovia line of credit, the Court cannot conclude that Mr. Brown's loan was funded with a line of credit for which the lender was solely responsible. Therefore, despite NovaStar Home having closed Mr. Brown's loan in its own name, the Court should conclude as a matter of law that NovaStar Mortgage did not acquire the Brown loan in a bona fide secondary market transaction because NovaStar Home was not solely responsible for the line of credit used to fund the loan.

### ii. Mr. Martinelli's Loan

Mr. Martinelli's note lists West Valley as the lender, a fact which favors a finding that NovaStar Mortgage merely acquired Mr. Martinelli's loan in the secondary market. *See* Dkt. 193, Exh. 6 at 16. As with the Brown loan, however, West Valley was not solely responsible for the line of credit used to fund the Martinelli loan. As the defendant concedes, NovaStar Mortgage signed a performance guaranty on behalf of West Valley. Dkt. 223 at 6; 211-3, Exh. 34 at 34. The plaintiffs contend that NovaStar Capital used a Wachovia line of credit to provide West Valley with the line of credit used to fund the Martinelli loan, and the defendants do not refute this contention. *See* Dkt. 213 at 7. There being no dispute as to whether both NovaStar Mortgage and West Valley were responsible for payment on the line of credit used to fund the

Martinelli loan, the Court should conclude that West Valley was not solely responsible for the line of credit used to fund the loan and that the Martinelli loan does not constitute a bona fide secondary market transaction.

### b. Table-Funded Transactions

The plaintiffs contend that the Martinelli and Brown loans were table-funded and are therefore subject to RESPA. Since neither loan qualifies as a bona fide secondary market transaction, the Court need not consider this additional ground for requiring compliance with RESPA.

### c. Corporate Disregard

The plaintiffs advance a third theory for requiring NovaStar Mortgage to comply with RESPA with respect to the Martinelli and Brown loans. The plaintiffs ask the Court to disregard the corporate form as to NovaStar Home and NovaStar Mortgage because the two entities were one and the same and because the former was an agent of the latter. Since RESPA applies to these loans, the Court need not rule on these arguments.

### 2. RESPA Compliance

RESPA requires that borrowers be provided a good faith estimate listing the "amount or range" of settlement charges within three days of receiving a loan application. *See* 12 U.S.C.§2604(c), 24 C.F.R. §3500.7(c). To comply with RESPA, a good faith estimate must disclose the yield spread premium. *See* 24 C.F.R. §3500, App. A, § L (Settlement charges include "indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction" and "mortgage broker fee[s]."); *Anderson v. Wells Fargo Home Mortg., Inc.*, 259 F. Supp. 2d 1143, 1146 (W.D.Wash. 2003) ("RESPA unambiguously requires lenders

. . . to disclose to a loan applicant a variety of information about the proposed loan, including the fact and amount of any YSP to be paid outside closing to the broker by the lender.").

Mr. Brown contends that he was never shown a good faith estimate. *See* Dkt. 211-2, Exh. 1 at 6. The standard procedure of the NovaStar Home office from which Mr. Brown received his loan was to mail each loan applicant a good faith estimate. Dkt. 226, Exh. 8 at 15. While this evidence does not establish as a matter of law that Mr. Brown did receive a good faith estimate, it is sufficient to create a genuine issue of material fact for trial.

The good faith estimate in Mr. Brown's file, which Mr. Brown contends he did not receive, contains a space for disclosure of the yield spread premium. *See* Dkt. 211-2, Exh. 3 at 13 (good faith estimate listing "yield spread premium from Novastar to Novastar (0-3%) $___"). Mr. Martinelli signed a good faith estimate with a similar disclosure. *See* Dkt. 193, Exh. 2 at 11. As both sides acknowledge, the Court has already held that there are genuine issues of material fact as to whether YSP disclosures in a range beginning with zero are inadequate. Dkt. 126 at 11. The Court should therefore decline to rule that the YSP disclosures in the good faith estimates for the Brown and Martinelli loans are inadequate as a matter of law.

**3. HUD-1 Statement**

The plaintiffs also seek summary judgment on the grounds that the HUD-1 statements on the Brown and Martinelli loans are silent as to the YSPs charged on those loans and therefore violate RESPA's disclosure requirements. Dkt. 213 at 20, 23. As NovaStar Mortgage points out, such a claim is outside the current definition of the class, which centers on the adequacy of disclosures on good faith estimates rather than HUD-1 Settlement Statements. Dkt. 223 at 7; Dkt. 177 at 9-10 (class definition). In the reply, the plaintiffs ask that the Court re-

define the class to encompass violations of disclosure requirements in HUD-1 statements and violations of RCW 31.04.105(4). Dkt. 228 at 12. Because it appears for the first time in the reply, the defendant has been deprived of an opportunity to respond to this argument. The plaintiffs acknowledge this and propose that the Court direct the parties to brief whether the class definition should be amended. Dkt. 228 at 13.

The Court declines to consider whether to redefine the class because this request, appearing for the first time in the reply, was not properly filed as a motion. In any event, such a request is not timely. The Court should therefore deny the plaintiffs' motion as to the HUD-1 statements on the Brown and Martinelli loans. This ruling has no bearing on the evidentiary value of the plaintiffs' HUD-1 statements in proving claims falling within the class definition.

### IV. ORDER

Therefore, it is hereby

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Dkt. 213) is **GRANTED in part** and **DENIED in part** as provided herein.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

DATED this 30th day of May, 2007.

Robert J. Bryan
United States District Judge