THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CAMERON PIERCE and PATRICIA PIERCE, husband and wife; KAREN KIRBY, a single woman; GREGORY SHERMAN and PAULA SHERMAN, husband and wife, MICHAEL LEPAGE and GERTRUDE LEPAGE, husband and wife; RALPH MARTINELLI; and LARRY BROWN,<br><br>                  Plaintiffs,<br><br>vs.<br><br>NOVASTAR MORTGAGE, INC, a foreign corporation,<br><br>                  Defendant. | NO. C05-5835 RJB<br><br>DEFENDANT NOVASTAR MORTGAGE, INC.'S TRIAL BRIEF |

## I.  INTRODUCTION

Pursuant to the Court's Pretrial Order, Defendant NovaStar Mortgage, Inc. ("NovaStar Mortgage"), by counsel, respectfully submits this Trial Brief.  This matter is set for a trial by jury on June 11, 2007.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500  •  FACSIMILE (253) 620-6565

## II.    FACTUAL BACKGROUND

The Court has certified the following class:

- You entered into a federally-regulated mortgage loan that was subject to the requirements of Washington Law and secured by property within the State of Washington, at any time from December 30, 2001 to the present; and

- NovaStar paid money to your mortgage broker in return for negotiating a higher interest loan for you ("Payment"); and

- Neither NovaStar nor the broker adequately disclosed to you the Payment on a good faith estimate dated no later than three days after the date on which NovaStar received your loan application or, if you application was received fewer than three days before you signed final loan documents, the date on which you signed final loan documents; and

- You paid the mortgage broker compensation in the form of an "origination fee" or "broker fee" in addition to the Payment that NovaStar paid to the broker.

This class includes loans of two different types: (1) brokered loans (the "broker class") and (2) loans obtained by NovaStar Mortgage in the secondary mortgage market (the "secondary market" class).[1]

## A.    The Brokered Loans Obtained by NovaStar Mortgage

NovaStar Mortgage is a residential nonconforming lender headquartered in Kansas City, Missouri.  Most of NovaStar Mortgage's loans come from mortgage brokers.  NovaStar Mortgage has contractual agreements with hundreds of mortgage brokers in Washington State that submit potential loans to NovaStar Mortgage.

---

[1]  On May 31, 2007, plaintiffs filed a motion to modify the class definition which is set for a hearing on Friday, June 15, 2007, or five days after the start of the trial in this matter.  Defendant will be filing its opposition to the motion to modify the class definition within the time frame permitted under the rules of this Court.

DEF'S TRIAL BRIEF - 2 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

NovaStar Mortgage makes the brokers aware of the current "wholesale" interest rates available to them by posting what are called "rate sheets" on a web site accessible by password. Significantly, NovaStar Mortgage does not market or offer these "wholesale" interest rates directly to the public. Instead, these loans can only be obtained through brokers. The broker and the borrower ultimately agree on an interest rate that takes into account, *inter alia*, the way that the broker is to be compensated.

Like all businesses, brokers seek to pay their overhead expenses and make some profit. A broker may be compensated by both the borrower and the lender. Typically, the broker receives compensation from both. NovaStar Mortgage compensates brokers through payments that it labels "yield spread premiums."

In addition to identifying the wholesale interest rates, the rate sheets also identify the compensation available to brokers for different loans. The rate sheets describe the compensation in terms of points. A point is one percent of the loan amount. Testimony at trial will show that when the broker receives some or all of his or her compensation from the lender, the borrower may, – but does not always – pay a higher interest rate than if the borrower had elected to pay all of the broker's compensation out of his or her own pocket. Plaintiffs claim that some 1000 class members have brokered loans.

**B.      The Loans Obtained by NovaStar Mortgage in the Secondary Mortgage Market**

Some class members have loans that NovaStar Mortgage purchased from correspondent lenders in the secondary mortgage market.

NovaStar Mortgage has contracts with certain correspondent lenders that permit those lenders to submit closed and funded loans to NovaStar Mortgage for possible purchase. As discussed in Section II.A.6 below, when NovaStar Mortgage purchases a

DEF'S TRIAL BRIEF - 3 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

loan in the secondary mortgage market, no yield spread premium is involved and RESPA's disclosure requirements do not apply.

Plaintiffs claim that the LePages and approximately 50 other class members have secondary market loans.

## C.    The Named Plaintiffs' Claims

There are eight named plaintiffs involved in the case:  (1) Cameron and Patricia Pierce: (2) Larry Brown; (3) Karen Kirby; (4) Gregory and Paula Sherman; (5) Ralph Martinelli and (6) Michael and Gertrude LePage.

### 1.    Cameron and Patricia Pierce

The Pierces obtained a mortgage loan through a mortgage broker from NovaStar Mortgage in August 2003.  At the time they were seeking to refinance their loans, the Pierces were seriously delinquent on their real estate taxes.  The testimony at trial will be that they needed to pay overdue taxes in the amount of $12,590.46, and that they had only $3,000 in their savings account.  The refinance loan that the Pierces obtained from NovaStar Mortgage allowed them to pay their overdue taxes and they received cash back from the closing in the amount of $1,347.64.  The Pierces are suing NovaStar Mortgage because it paid the Pierces' broker, their friend Ruth Klein, $2,040 in connection with this refinance transaction.

Mr. Pierce, who has nearly 20 years of experience in the mortgage business, is fully familiar with yield spread premiums.  Mr. Pierce hired a friend of his, Ruth Klein, to serve as his mortgage broker.  There are four Good Faith Estimates in the Pierces' loan file.  All of the Good Faith Estimates are dated June 11, 2003.  Three of those Good Faith Estimates project that a YSP of 2 percent will be paid.  The fourth GFE was signed

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

by the Pierces on August 12, 2003, and does not list a YSP. The Pierces contend that they never received any of the three GFEs that do list the YSP. Mr. Pierce also contends that, despite his familiarity with YSPs and knowledge of their widespread usage in the lending industry, he never asked Ms. Klein whether there was a yield spread premium associated with his loan. Mr. Pierce says he learned only at loan closing that a YSP was involved with his loan. He conceded, however, that he knew what the interest rate on his loan would be well in advance of loan closing and did nothing to shop that rate around despite his knowledge and industry contacts.

Although Mr. Pierce claims that he was angry with Ms. Klein for not disclosing the yield spread premium to him, he still hired her the next year when he again refinanced his loan with NovaStar Mortgage. A comparison of those loans illustrates another fallacy in plaintiffs' logic – their apparent belief that their mortgage brokers would have foregone the compensation provided by the YSP without increasing their up-front charges. The HUD-1 Settlement Statement showed that the broker received the following broker compensation for the Pierces' 2003 loan:

| 2003 Loan Broker Fees (Note Interest Rate 9.125%) | |
|---|---|
| Loan Origination 1% Points Paid by Borrower | $2,125.00 |
| Processing Fee Paid by Borrower | $420.00 |
| Broker Fee Paid by Borrower | $500.00 |
| Yield Spread Differential (P.O.C.) by NovaStar | $2,040.00 |
| **TOTAL** | $5,085.00 |

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

In August of 2004, the Pierces refinanced their mortgage again with NovaStar Mortgage to pay off an additional $13,000 in debt. When the Pierces refinanced, they agreed to another two-year adjustable rate mortgage, but with a higher initial interest rate of 9.6 percent.

The broker received the following fees for the 2004 loan:

| 2004 Loan Broker Fees (Note Interest Rate 9.600) | |
|---|---|
| Loan Origination 2% Points Paid by Borrower | $4,845.00 |
| Processing Fee Paid by Borrower | $400.00 |
| Broker Fee Paid by Borrower | $495.00 |
| No Yield Spread Paid | 0 |
| **TOTAL** | $5,740.00 |

Therefore, the broker earned approximately the same amount in fees for both loans but for the 2004 loan – the loan with no yield spread – the Pierces made up the difference by paying the broker more out of their own pocket. For the 2004 loan, the Pierces paid a two percent origination fee compared to a one percent origination fee in the 2003 loan. In the 2003 loan, the additional one percent came from the yield spread premium paid by NovaStar Mortgage to the broker. Despite the absence of a yield spread premium, the 2004 loan had a higher interest rate.

## 2. Larry J. Brown

Larry J. Brown contacted a NovaStar Home Mortgage Inc. branch in Indianapolis, Indiana, in May of 2004 to discuss refinancing the mortgage on his home in Tacoma, Washington. At the time, Mr. Brown was seriously delinquent on several credit cards. As a result of the refinance loan he obtained, Mr. Brown was able to pay off $19,935 in outstanding credit card debt and he walked away from the closing table with

DEF'S TRIAL BRIEF - 6 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 · FACSIMILE (253) 620-6565

$8,713.23 in cash.  Mr. Brown's claim relates to the payment by NovaStar Mortgage in the amount of $3,150 to NovaStar Home.

Mr. Brown was behind on his credit cards, had low credit scores and had been delinquent on his mortgage payments because he had decided to take nearly two years off from work and live on unemployment compensation because he needed "a long rest." NovaStar Home Mortgage asked Mr. Brown to write a letter explaining his credit problems and he agreed.  Here is what Mr. Brown wrote:

> Hi!  I am writing you this letter to explain why I need a loan from your company.  I have been unemployed for about 22 months.  I am working now and want to consolidate my bills to a level that will fit my new income.
>
> I was working for the Yankee Grill & Roaster restaurant for 3 years (part of Mitzels Corporation, which I worked for 10 years) when the owner came in one day and said "today is the last day; the restaurant is closed."  I was laid off for the first time in my work history.  I decided this would be a good time to collect my unemployment and take a long rest, which I needed after working for Mitzels Corporation.
>
> ***
>
> I needed the break from work.  Now I am well rested and ready to work for another 30 years.  I have a new job now with McDonald Corporation. It has lots of opportunities for me so I will be there for a long time.  I like the job and when that happens I am there for 10 years or longer.
>
> Please consider my request for little help in my time of need.  You will receive a lot of karma points if you decide to grant me the loan.  The universe will smile upon you for your kindness of heart.

Not surprisingly, Mr. Brown had been rejected by two other mortgage brokers or lenders at the time that he contacted NovaStar Home Mortgage.  NovaStar Home Mortgage provided Mr. Brown an initial disclosure package that included a Good Faith Estimate that disclosed a possible yield spread of 0-3 percent.  Mr. Brown received a loan from NovaStar Home Mortgage on May 28, 2004.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  •  FACSIMILE (253) 620-6565

3.      **Karen Kirby**

In the summer of 2003, Ms. Kirby contacted a mortgage broker to help her obtain a mortgage loan for the purchase of a home in Olympia, Washington.  On Ms. Kirby's behalf, the broker applied to NovaStar Mortgage for what is known as a stated income loan.  For a stated income loan, NovaStar Mortgage verifies employment but does not require documentation of income.  Instead, NovaStar Mortgage relies upon the income stated by the borrower in the application.  A stated income loan carries a higher interest rate than a loan supported by full documentation.

Ms. Kirby and her broker agreed to falsely overstate her income on her loan application.  Even though she made approximately $2,000 a month at that time, Ms. Kirby stated her income as over $3,000 a month.  She signed a certification stating that the information on the loan application was accurate, even though she knew her income was overstated.

Additionally, Ms. Kirby ended up with a below-par interest rate, *i.e.*, her rate was below the rate that NovaStar Mortgage made available to the mortgage broker with no yield spread being paid.  There was a 0.75 yield spread premium paid to the broker on Ms. Kirby's loan.  That would have raised her rate to an above par rate of 6.74.  NovaStar Mortgage, however, made a rate exception of one point for Ms. Kirby, reducing her note rate to 5.75 percent.  Ms. Kirby's claim involves the payment of $714.00 by NovaStar Mortgage to her mortgage broker.

4.      **Gregory and Paula Sherman**

The Shermans received a mortgage loan in June of 2003 to refinance their home in Chattaroy, Washington.  The Shermans contacted Krista Whitley, a loan officer at Progressive Lending LLC, a mortgage broker and lender in Spokane, Washington.

DEF'S TRIAL BRIEF - 8 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  ·  FACSIMILE (253) 620-6565

Ms. Whitley provided the Shermans a Good Faith Estimate that estimated that a yield spread premium of 0-4 percent would be paid.   While the Shermans complain this disclosure was inadequate, Ms. Whitley has testified that she explained to the Shermans that her fees could be paid by the lender in the form of a yield spread premium, by the borrower in the form of fees charged up front, or by some combination of fees from both the lender and the borrower.  She testified that the Sherman chose to have part of her fees paid by the lender in the form of a yield spread premium.  Ms. Whitley will also testified that if the Shermans had not agreed to the yield spread premium that she would have charged them more in fees.  Mrs. Sherman testified that although she knew the interest rate that she would receive before her loan closing, she did no comparison shopping.

As a result of the refinance loan that the Shermans were able to obtain from NovaStar Mortgage, they were able to payoff a number of outstanding debts which totaled approximately $8,000, and they walked away from the closing table with $5,000 in cash.

### 5.    Ralph Martinelli

In 2005, Ralph Martinelli wanted to refinance his home.  Mr. Martinelli first contacted a mortgage broker called Creative Concepts, but was told that they could not help him get a mortgage because of his "less than desirable" credit.

Mr. Martinelli contacted West Valley Mortgage ("West Valley") because he knew West Valley loan officer Ed Bennett.   On April 19, 2005, Mr. Bennett provided Mr. Martinelli a loan disclosure package. That package included a Mortgage Loan Origination Agreement and a Good Faith Estimate.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

Mr. Bennett reviewed the disclosure documents with Mr. Martinelli line-by-line. This line-by-line review included the Good Faith Estimate. The GFE included a disclosure of YSP 0-3. Mr. Bennett went over the YSP disclosure in his review of the GFE with Mr. Martinelli.

In connection with his refinancing, Mr. Martinelli was able to pay off an outstanding debt to Ford Credit in the amount of $5,883, and he walked away from the closing table with $10,687.97 in cash. Mr. Martinelli's claim relates to the payment of $2,273.00 by NovaStar Mortgage to his original lender, West Valley Mortgage, when NovaStar Mortgage purchased this loan.

### 6.    Michael and Gertrude LePage

In June of 2003, Michael and Gertrude LePage wanted to refinance the mortgage on their home in Addy, Washington. The LePages applied for a mortgage loan with CLS Mortgage, Inc., in Spokane, Washington. CLS is a mortgage lender. CLS has contractual agreements with various investors under which it submits closed and funded loans to those investors for possible purchase on the secondary market. One of those investors is NovaStar Mortgage.

In August of 2003, CLS Mortgage originated, funded and closed the mortgage loan with the LePages in its own name. CLS later sold the loan to NovaStar Mortgage in a secondary mortgage market transaction. The Court previously ruled that this was a secondary market transaction not subject to RESPA. Dkt. 140 at 7-8.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

### III.    LEGAL ANALYSIS

**A.    NovaStar Mortgage Has Not Violated the CPA as to the Broker Class**

To prove a Washington Consumer Protection act claims, the class members must establish;  (1) an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) impacting the public interest, and (4) proximately causing (5) injury to the plaintiff in his or her business or property.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531, 535 (1986).  Failure to prove anyone of these elements is fatal to plaintiffs' claims.  *Id.* at 793.

**1.    NovaStar Mortgage Has Not Committed Unfair and Deceptive Acts With Regard to the Broker Class**

The broker class alleges that the disclosure of the yield spread premium failed to comply with the Real Estate Settlement Procedures Act ("RESPA").  Plaintiffs argue that a violation of RESPA is a violation of the Consumer Loan Act.  In turn, a violation of the Consumer Loan Act is a per se unfair and deceptive act under the Consumer Protection Act.  The broker class will not be able to prove that NovaStar Mortgage committed an unfair and deceptive act.

The vast majority of the members of the broker class received a YSP disclosure on their GFEs.[2]  The most common form of disclosure was as a range.  The vast majority of the class members did receive a disclosure in the form of a range.  The range 0 to 3 percent is the most common but other ranges were used as well.  These ranges include

---

[2]  The Court already has ruled that Good Faith Estimates that make no mention of a yield spread premium on loans that included yield spread premiums are inadequate under RESPA, and therefore violate the CLA and represent an unfair and deceptive act under the CPA.  Only a small percentage of the class members received no yield spread premium disclosure on the GFE.

DEF'S TRIAL BRIEF - 11 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA, PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

2-3%, 1-4%, 1-3%, 1-2%, and 0.5-3%. In every instance where the YSP was disclosed as a range, the ultimate YSP payments were within the stated range.

When the plaintiffs' loans were made, NovaStar Mortgage appropriately relied upon the mortgage brokers to provide the Good Faith Estimate disclosures.[3] These disclosures are made very early in the process. The broker is supposed to provide the disclosures within three days of application. At this time, the existence and amount of any yield spread premium may simply not be known.[4] Appropriately, given the early nature of these disclosures, the plain language of the relevant federal regulation and statutes provide that the estimate may be disclosed as a range.

The relevant federal regulations state with regard to disclosure of a yield spread premium that:

> [A]ny other fee or payment received by the mortgage broker from either the lender or the borrower arising from the initial funding transaction, including a servicing release premium or yield spread premium is to be noted on the Good Faith Estimate and listed in the 800 series of the HUD-1 Settlement Statement.

24 C.F.R. pt. 3500, App. B – Illustrations of Requirements of RESPA.

In turn, RESPA, Section 2604(c) provides:

> (c) Estimate of charges:
> Each lender shall include with the booklet a good faith estimate of the amount or range of charges for specific settlement services the borrower

---

[3] The regulations implementing RESPA state:
> A mortgage broker must provide a good faith estimate within three days of receiving a loan application based on his or her knowledge of the range of costs. As long as the mortgage broker has provided the good faith estimate, the funding lender is not required to provide an additional good faith estimate, but the funding lender is responsible for ascertaining that the good faith estimate has been delivered.

24 C.F.R. § 3500.

[4] Indeed, a significant percentage of the brokered loans that NovaStar Mortgage acquires through brokers in Washington state have no yield spread premiums at all.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

is likely to incur in connection with the settlement as prescribed by the
Secretary.

The accompanying regulations instruct:

(c) Content of good faith estimate. A good faith estimate consists of an estimate,
as a dollar amount **or range**, of each charge which:

(1) Will be listed in section L of the HUD-1 or HUD-1A in accordance with the
instructions set forth in Appendix A to this part; and

(2) That the borrower will normally pay or incur at or before settlement based
upon common practice in the locality of the mortgaged property. Each such
estimate must be made in good faith and bear a reasonable relationship to the
charge a borrower is likely to be required to pay at settlement, and must be based
upon experience in the locality of the mortgaged property. As to each charge
with respect to which the lender requires a particular settlement service provider
to be used, the lender shall make its estimate based upon the lender's knowledge
of the amounts charged by such provider.

(emphasis added).   Thus, the clear language of the RESPA and its accompanying

regulations permit the yield spread premium to be disclosed as a range.

In their Motion for Partial Summary Judgment filed February 1, 2007, plaintiffs

sought a ruling that the good faith estimates for the named plaintiffs listing the YSP as a

range beginning with "0%" and either a dollar amount of "$0.00" or no dollar amount at

all are inadequate as a matter of law.  Dkt. 103, at 10.

In its March 15, 2007 Order Granting in Part and Denying in Part Plaintiffs'

Motion for Partial Summary Judgment, the Court declined to so rule.  Rather, the Court

specifically held that fact questions regarding whether the disclosures of the YSP

payments were in good faith precluded such a ruling.  Specifically, the Court held:

plaintiffs fail to demonstrate that NovaStar's estimation that a borrower
would not, or may not, be required to pay a YSP is inadequate or
otherwise unlawful.  In other words, the plaintiffs fail to demonstrate that

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  •  FACSIMILE (253) 620-6565

this estimation was not in good faith or that NovaStar was not permitted to pay a YSP due to such a disclosure.

Dkt. 126, at 11.

In so holding, the Court noted that the following fact questions were relevant to determining whether any particular disclosure was made in good faith:

- when NovaStar Mortgage knew that a YSP would be charged

- when NovaStar Mortgage knew what rate would be charged

- whether NovaStar Mortgage knew the YSP rate at the time of the good faith estimate

*Id.*[5]  Plaintiffs will not be able to make these factual showings.

### 2.    Mr. Pierce's Claim Is Outside the Scope of the CPA Because He Is a Sophisticated Consumer

Given his bonanza of experience in, and knowledge of, the financial industry, and his specific acknowledgment that he was well aware of the purpose and payment of yield spread premiums to mortgage brokers, Mr. Pierce may not properly seek relief under the Washington Consumer Protection Act.  This is because Washington courts consistently have to refused to extend the scope of the CPA to experienced business persons "not representative of bargainers subject to exploitation and unable to protect themselves." *Pacific Northwest Life Ins. Co., v. Turnbull*, 51 Wash. App. 692, 703, 754 P.2d 1262, 1269 (1988).  When a plaintiff has "sufficient sophistication," he removes himself from the regular class of bargainers, and thereby removes himself from the ambit of the CPA. *Segal Co. v. Amazon.com*, 280 F. Supp. 2d 1229, 1234 n.5 (W.D. Wash. 2003) (the CPA "does not provide extra protection for those individuals who, like [Mr. Pierce], have

---

[5] NovaStar Mortgage continues to maintain that the necessity of establishing these same "facts" for each and every borrower in the class precludes class treatment of plaintiffs' CPA claim.

DEF'S TRIAL BRIEF - 14 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

sufficient sophistication to remove them from the class of bargainers subject to exploitation").

Here, there can be no reasonable dispute that Mr. Pierce is not a "regular consumer" when it comes to interest rates and the payment of yield spread premiums. As discussed above, Mr. Pierce testified to his nearly twenty years of experience in the lending industry, to his specific understanding of the role of yield spread premiums in broker compensation, and to explicit awareness that loan terms are subject to negotiation. Mr. Pierce cannot contend that he did not have the knowledge to review his loan, ask appropriate questions and bargain as he saw fit. In fact, his broker – Ms. Klein – was a friend with whom Mr. Pierce had dealt with on numerous times over the years. Given Mr. Pierce's level of sophistication and close association with, and knowledge of, the lending process, he may not now seek to feign surprise that his broker was compensated through a yield spread premium.

### 3    Ms. Kirby Is Precluded from Recovering Under the CPA Because She Falsely Stated Her Income

Ms. Kirby's admission that she falsely stated her income – a material term of her loan application – precludes her from recovering under the CPA.

"The CPA exists to protect consumers, not to aid and abet fraud." *Mutual of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 652, 757 P.2d 499, 504 (1998). Accordingly, Washington courts have consistently rejected plaintiffs' attempts to recover under the CPA where they have engaged in fraud. *Id.*; *Tornetta v. Allstate Ins. Co.*, 94 Wn. App. 803, 810-11, 473 P.2d 8, 12 (1999); *Wickswat v. Safeco Inc. Co.*, 78 Wn. App. 958, 971, 904 P.2d 767, 774 (1995). Because the facts will lead the jury to conclude that Ms. Kirby engaged in fraud, her CPA claim fails. *Id.* ("we find that the trial court in this

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 • FACSIMILE (253) 620-6565

case correctly directed the jury not to consider plaintiff's bad faith and CPA violation claims if it found that he intentionally misrepresented or concealed material facts during the claims process.").

### 4.    The Broker Class Members Will Not Be Able to Prove Proximately Caused Injury

Even if the named plaintiffs and broker class members should show a deceptive act, they still must prove under Washington law that the alleged deceptive act proximately caused their injury. *See Hangman Ridge,* 719 P.2d at 539. This requires plaintiffs to prove "proximate cause." *See Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 314, 858 P.2d 1054, 1062 (1993). Proving proximate cause requires plaintiffs to show that (1) "but for" the deceptive act or practice they would have received a "par" interest rate, *City of Seattle v. Blume*, 134 Wn.2d 243, 251-52, 947 P.2d 223, 227 (1997); *see also Nuttall v. Dowell*, 31 Wn. App. 98, 110-11, 639 P.2d 832 (1982), and that their higher interest rate "would not have" happened in the absence of NovaStar Mortgage's purported failure to disclose the yield spread premium. *Fisons Corp.*, 122 Wn.2d at 314-15, 858 P.2d 1062; 6A Wash. Prac., Wash. Pattern Jury Instr. Civ., WPI 310.07 (5th ed. 2004) (defining proximate cause for CPA claims as "a cause which in direct sequence produces the injury complained of and without which such injury would not have occurred.").

To demonstrate that they would have received the par rate for their loan had proper disclosure been made, Washington law requires plaintiffs and the class to prove that either (1) their broker would have made the rate available to them without increasing their up front fees, or (2) they could have obtained a loan at a lower rate from a different broker or lender without paying more in fees. Plaintiffs also must show they had no

DEF'S TRIAL BRIEF - 16 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  •  FACSIMILE (253) 620-6565

knowledge separate and apart from the good faith estimate of the connection between the yield spread premium and the interest rate that they received.

First, the plaintiffs must show that their particular broker was willing to make their individual par rate available to them without a corresponding increase in the fees that they would have to pay. This showing is required because NovaStar Mortgage does not make these "wholesale" loan interest rates available directly to borrowers. These rates can only be obtained through mortgage brokers. Therefore, plaintiffs will have to show that the broker they dealt with would have foregone the yield spread premium rate and provided them their par interest rate without increasing their fees. Plaintiffs cannot make this showing. In fact, the broker associated with the Sherman loan has testified that she would not have given up the yield spread compensation without increasing the fees required of the borrower.

Lacking evidence that their broker would have relinquished the yield spread premium compensation, the named plaintiffs and class members would need evidence that they could have obtained a loan with a lower interest rate for the same out of pocket fees from another broker or lender. The named plaintiffs cannot produce this evidence either. Not a single named plaintiff made any attempt to determine if a loan with a lower interest rate would have been available from a different broker or a different lender.

Additionally, plaintiffs cannot establish proximate cause – even if the yield spread premium was not adequately disclosed on the GFE – if they had actual knowledge of the YSP from another source. Of course, there can be no dispute that plaintiffs' actual knowledge is relevant to deciding whether proximate cause exists. If plaintiffs had actual knowledge of the yield spread premium from discussions with their mortgage

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500 - FACSIMILE (253) 620-6565

broker or any other sources, they cannot claim to have been deceived even if it was mistakenly omitted from the GFE. *Sheldon v. American States Preferred Ins. Co.,* 123 Wn. App. 12, 17-18, 95 P.3d 391, 393-94 (2004), *review denied,* 153 Wn.2d 1030, 110 P.3d 756 (2005) (holding that technical violation of notice provision is not actionable when consumer has actual notice from another source.); *Robinson v. Avis Rent-a-Car System, Inc.*, 106 Wn. App. 104, 117-18, 22 P.3d 818, 825 (finding no deceptive act where plaintiffs had actual knowledge of alleged omitted fact); *Fisons*, 122 Wn.2d at 315, 858 P.2d at 1062 (doctor would not have CPA claim if he had knowledge from another source of information allegedly omitted by drug manufacturer).

The broker associated with the Shermans' loans has testified that she explained the yield spread and its link with the interest rate to the Shermans and that the Shermans agreed to the higher interest rate well in advance of loan closing to keep their upfront costs down. There will be other broker testimony regarding individual brokers' practices and procedures about explaining the link between the yield spread premium and the interest rate and giving the borrower the option to pay more in up front fees or take a higher interest rate.

### 5.    Ms. Kirby Cannot Show Injury Because She Received a Below Par Loan

Additionally, Ms. Kirby and similarly situated class members cannot demonstrate injury because they received a below-par loan and can claim no basis at all for injury.

The rate sheet used for Ms. Kirby's loan showed the following rates:

DEF'S TRIAL BRIEF - 18 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON 98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

2 Year Fixed – 80%

| Points | 2-YR Rate |
|--------|-----------|
| 1 | 6.250 |
| 0 | 6.625 |
| (1) | 7.125 |
| (2) | 7.750 |

Thus, the starting point to determine the par rate for Ms. Kirby's loan was the rate corresponding to 0 – 6.625.  That is only a beginning point because NovaStar Mortgage calculates an individual par rate for each borrower.  Ms. Kirby's individual par rate is calculated by: (1) adding 0.375 because the loan is a stated income loan with a loan to value rate of 80 percent, (2) adding 0.125 because she also took out a second mortgage and the combined loan to value rate of both mortgages was between 90 and 95 percent and (3) subtracting 0.75 because her FICO (credit) score was between 680 and 699.  Thus the par rate for Ms. Kirby's loan was 6.375.

There was a 0.75 yield spread premium paid to the broker on Ms. Kirby's loan.  That would have raised her rate to an above par rate of 6.74.  NovaStar Mortgage, however, made a rate exception of one point for Ms. Kirby, reducing her note rate to 5.75 percent.  This is 0.625 below par.

Evidence at trial will demonstrate that three of the named class members, and at least 455 members of the putative class, were given rate exceptions that more than canceled out any interest increase allegedly related to the yield spread premium.  As in Ms. Kirby's case these borrowers cannot prove any injury at all.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

**6.      The Secondary Market Class Will Not Be Able to Show an Unfair and Deceptive Act**

The secondary market class is not relying on a statutory violation to establish an unfair or deceptive act.  Instead, the secondary market class claims that the CPA itself somehow creates an independent obligation that required NovaStar Mortgage to disclose to the LePages on a GFE the amount that NovaStar Mortgage paid acquire their loan in a secondary market transaction.

The secondary market class will not be able to establish any such obligation and their claim will fail as a matter of law.

First, there simply is no authority to support this claim.  Lenders currently are under no obligation to identify on GFEs compensation paid for a secondary mortgage transaction.  Such a duty should not be retroactively imposed in the absence of any statute, or regulation (federal or otherwise) that even hints at such a requirement.

Second, there is no obligation on the part of the acquiring lender in a secondary market transaction to provide a GFE to the borrower.  The GFE is the responsibility of the lender that funds and closes the loan.  Plaintiffs can identify no disclosure obligation of any kind imposed upon the acquiring lender in a secondary market transaction.

Third, under its plain language, the CPA cannot be properly invoked here.  Under RCW 19.86.170, the CPA does not apply to actions and transactions that are permitted, prohibited or regulated by federal laws and regulatory bodies.  It is beyond dispute that RESPA and its related regulations control the content of Good Faith Estimates.  It is also beyond dispute that in those related regulations, HUD has exempted secondary market transactions from RESPA's disclosure.  Because HUD *specifically permits* that sums

DEF'S TRIAL BRIEF - 20 of 21
(C05-5835 RJB)
[1383428 v2.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  -  FACSIMILE (253) 620-6565

paid to acquire a loan on the secondary market need not be disclosed on the GFE, as a matter of law, the CPA does not apply here.

For these reasons the secondary market class will not be able to prove its claim.

### 7. The Secondary Market Class Cannot Prove Proximately Caused Injury

For the same reasons set out above with regard to the broker class members, the secondary market class members will not be able to prove proximately caused injury.

Dated this 4th day of June, 2007.

    //S//
Salvador A. Mungia, WSBA # 14807
smungia@gth-law.com
Stephanie Bloomfield, WSBA #24251
sbloomfield@gth-law.com
GORDON, THOMAS, HONEYWELL,
MALANCA PETERSON & DAHEIM
1201 Pacific Avenue, Suite 2100
Tacoma, WA  98402
(253) 620-6500 (Telephone)

Mitchel H. Kider
Donald C. Brown, Jr.
WEINER BRODSKY SIDMAN KIDER, PC
1300 Nineteenth Street, N.W.
Washington DC 20036
(202) 628-2000 (Telephone)
Attorneys for Defendant NovaStar Mortgage, Inc.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
1201 PACIFIC AVENUE, SUITE 2100
POST OFFICE BOX 1157
TACOMA, WASHINGTON  98401-1157
(253) 620-6500  ·  FACSIMILE (253) 620-6565